529 N.W.2d 429 (1995)
John A. COCHRANE, Respondent (C8-94-1813), Appellant (C4-94-2036),
v.
TUDOR OAKS CONDOMINIUM PROJECT, an Ontario Limited Partnership, Nul Tiel, Respondent,
K.S.C.S. Properties, Inc., a Minnesota Corporation, Applicant for Intervention, Appellant (C8-94-1813).
Nos. C8-94-1813, C4-94-2036.
Court of Appeals of Minnesota.
March 28, 1995.
Review Denied May 31, 1995.
*430 Jan Stuurmans, Law Offices of Jan Stuurmans, P.A., Minneapolis, for Cochrane.
Wood R. Foster, Jr., Jordan M. Lewis, Siegel, Brill, Greupner & Duffy, P.A., Minneapolis, for Tudor Oaks Condominium Project.
*431 Laura J. Hanson, Joseph W.E. Schmitt, Meagher & Geer, Minneapolis, Thomas M. Zappia, Fridley, for K.S.C.S. Properties, Inc.
Considered and decided by HUSPENI, P.J., HARTEN and FOLEY,[*] JJ.

OPINION
HUSPENI, Judge.
Following protracted litigation and an appeal in the underlying action, respondent Tudor Oaks Condominium Project was awarded a judgment against appellants John A. Cochrane and K.S.C.S. Properties. Appellants brought this action seeking to have the judgment vacated, alleging the judgment was void because it was obtained by a nul tiel entity. Tudor Oaks moved for summary judgment on the grounds that appellants had waived their right to challenge Tudor Oaks' status as a corporate entity by proceeding with the underlying action; the motion was granted. Appellants now seek to have the summary judgment reversed and to have this court remand with instructions to vacate the underlying judgment. Because we find that appellants have waived their right to challenge Tudor Oaks' capacity to sue, we affirm the grant of summary judgment.

FACTS
In 1987, S.B. McLaughlin & Co. (McLaughlin) brought an action against John Cochrane, K.S.C.S. Properties, Inc. (KSCS), Tudor Oaks Condominium Project (Tudor Oaks), and ABIO Holdings, Inc. (ABIO). McLaughlin proceeded as plaintiff individually and in a derivative capacity on behalf of Tudor Oaks and ABIO, alleging that Cochrane and KSCS had breached their fiduciary duties. When suit was commenced, Tudor Oaks was a limited partnership chartered in Ontario, Canada. ABIO, Tudor Oaks's general partner, was a Minnesota corporation. McLaughlin was a limited partner of Tudor Oaks.
The action was removed to federal court on diversity grounds. On September 12, 1989, McLaughlin acquired sole ownership of Tudor Oaks and ABIO. On August 19, 1990, Tudor Oaks lost its limited partnership charter in Ontario. The action was remanded to the state district court in November 1990. On October 11, 1991, ABIO was statutorily dissolved in Minnesota.
On December 12, 1991, McLaughlin moved to amend its complaint to reflect its sole ownership of Tudor Oaks and ABIO. The district court granted McLaughlin's motion on January 10, 1992. This eliminated McLaughlin's derivative action against Tudor Oaks and ABIO, and realigned Tudor Oaks and ABIO as plaintiffs proceeding in their own right against Cochrane and KSCS. The parties did not inform the court that Tudor Oaks had dissolved or that ABIO was no longer a legal entity.
The case proceeded to trial in the summer of 1992. The jury returned a special verdict finding Cochrane had breached a fiduciary duty to McLaughlin, causing damages of $792,000. The jury also found Cochrane had breached a fiduciary duty to Tudor Oaks, causing damages of $1.628 million, and that KSCS had conspired with Cochrane to breach a fiduciary duty to Tudor Oaks, causing damages of $3.52 million.
On appeal, this court reversed the award to McLaughlin, holding that as a matter of law Cochrane owed no fiduciary duty to McLaughlin. See S.B. Mclaughlin & Co., Ltd. v. Cochrane, No. C4-92-2081, 1993 WL 231672 (Minn.App. June 29, 1993), pet. for rev. denied (Minn. Aug. 24, 1993). This court also reduced the remaining damages owed by KSCS and Cochrane to $1.26 million. Id.
In late 1993 and early 1994, Cochrane and KSCS brought actions to obtain relief from the judgment, arguing that the dissolution of Tudor Oaks and ABIO deprived the district court of subject matter jurisdiction, and that the judgment had been procured by fraud. Both actions were consolidated and Tudor Oaks moved for judgment on the pleadings. Tudor Oaks conceded that its limited partnership registration had expired and that *432 ABIO, its general partner, was dissolved. The district court held genuine issues of fact exist regarding whether the judgment was procured by fraud, but ordered summary judgment for Tudor Oaks, holding that the fraud issue should have been raised during the previous trial. The court also held that even though Tudor Oaks did not have a right to maintain an action as a dissolved partnership, Canadian law allowed McLaughlin, as the only remaining partner, to continue the action because it was commenced before the partnership dissolved. This appeal followed.

ISSUES
1. Are subject matter jurisdiction and standing viable theories of this case?
2. Did appellants waive their right to challenge Tudor Oaks' capacity to sue by not timely challenging it?

ANALYSIS
Tudor Oaks moved for judgment on the pleadings under Minn.R.Civ.P. 12.03. Because appellants presented matters outside the pleadings, Tudor Oaks' request for dismissal was treated as a motion for summary judgment. See Minn.R.Civ.P. 12.02.
On appeal from a summary judgment, this court must determine (1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its application of the law.
City of Virginia v. Northland Office Properties, 465 N.W.2d 424, 427 (Minn.App.1991), pet. for rev. denied (Minn. Apr. 18, 1991). Even though an appellate court may disagree with the trial court's analysis, summary judgment will be affirmed if it can be sustained on any grounds. Myers v. Price, 463 N.W.2d 773, 775 (Minn.App.1990), pet. for rev. denied (Minn. Feb. 4, 1991).
Appellants argue the district court erred in its conclusion that the question of fraud should have been raised in the underlying action. "On appeal, this court need not defer to the trial court's conclusion when reviewing questions of law." County of Lake v. Courtney, 451 N.W.2d 338, 340 (Minn.App. 1990), pet. for rev. denied (Minn. Apr. 13, 1990).
1. Appellants frame their argument in terms of "standing" and "subject matter jurisdiction." We believe, however, that neither theory is applicable to the case at hand. Rather, we conclude that the issue we must address is more properly analyzed in terms of "capacity to sue." A brief discussion of the differences among these three concepts may aid our resolution of the question raised by this case.
Subject matter jurisdiction has been defined as
not only authority to hear and determine a particular class of actions, but authority to hear and determine the particular questions the court assumes to decide.
Duenow v. Lindeman, 223 Minn. 505, 511, 27 N.W.2d 421, 425 (Minn.1947) (quoting Sache v. Wallace, 101 Minn. 169, 172, 112 N.W. 386, 387 (Minn.1907)). Because subject matter jurisdiction goes to the authority of the court to hear a particular class of actions, lack of subject matter jurisdiction may be raised at any time, including for the first time on appeal. Minn.R.Civ.P. 12.08(c) ("[w]henever it appears * * * that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"); Berke v. Resolution Trust Corp., 483 N.W.2d 712, 714 (Minn.App. 1992) (claimed lack of subject matter jurisdiction raised for the first time on appeal), pet. for rev. denied (Minn. May 21, 1992).
Despite the fact that appellants couch certain of their arguments on appeal in terms of subject matter jurisdiction, there is no question that the district courts of Minnesota have jurisdiction to consider matters brought under Minn.R.Civ.P. 60.02 or any other Minnesota Rule of Civil Procedure, to consider matters brought under Minn.Stat. § 548.14 (1992) and to consider any of the legal or equitable theories raised in a case. Nor is there any claim that the district court here violated the ruling set forth in Duenow, 223 Minn. 505, 27 N.W.2d 421.[1] Any relief *433 granted to appellants must be granted under a theory other than that of lack of subject matter jurisdiction.
We are also unable to bring appellants' challenges within the concept of "standing." This court has observed that "standing has been called one of the most amorphous concepts in the entire domain of public law." Sundberg v. Abbott, 423 N.W.2d 686, 688 (Minn.App.1988) (citation omitted), pet. for rev. denied (Minn. June 29, 1988).
The concept of standing is filled with complexities and uncertainties[, but] the fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a court and not, on the issues he wishes to have adjudicated.
Id. (citations and quotations omitted). Essentially, a potential litigant must allege injury in fact, or otherwise have a sufficient stake in the outcome, to have a court decide the merits of a dispute. See Middlewest Motor Freight Bureau v. United States, 525 F.2d 681, 683 (8th Cir.1975) (discussing federal requirement of standing).
Standing may be raised at any time. In re Welfare of Mullins, 298 N.W.2d 56, 61 n. 7 (Minn.1980). Nonetheless, courts appear hesitant to deny standing under circumstances which would prejudice the party whose standing would be found lacking. The eighth circuit in Middlewest, having noted that satisfaction of the constitutional element of standing requires that a plaintiff allege a sufficient stake in the outcome of the litigation, denied a challenge to standing. 525 F.2d at 683.
Policy factors in the instant case favor the conclusion that the appellants have the requisite standing. Appellants have been litigating the merits of the controversy for approximately ten years without anyone challenging their standing to do so. Moreover, a denial of standing * * * at this time would [be] unduly prejudic[ial].
Id.
We find no basis upon which to apply the doctrine of standing. McLaughlin (originally the sole plaintiff in the 1987 action) clearly had a stake in the outcome of that litigation. Tudor Oaks and ABIO were originally defendants in that action.
2. In contrast to subject matter jurisdiction, which concerns the court's ability to consider a question, and standing, which concerns a party's right to bring a particular action, capacity to sue concerns a party's right to maintain any action. By arguing that Tudor Oaks did not have the right to maintain an action, appellants are in fact arguing Tudor Oaks' lack of capacity to sue. See Lehigh Valley Coal Co. v. Gilmore, 93 Minn. 432, 434, 101 N.W. 796, 797 (Minn. 1904) (objection to a foreign corporation's failure to show compliance with statutes goes to the corporation's right to maintain an action).
Appellants base their argument on Minn. Stat. § 322A.75(a) (1992):
A foreign limited partnership transacting business in this state may not maintain any action, suit, or proceeding in any court of this state until it has registered in this state.
Because Tudor Oaks had not complied with the registration requirements, appellants argue that it had no capacity to maintain an action, and that the judgment issued in Tudor Oaks' favor should therefore be vacated.[2]
However, capacity to sue differs from both subject matter jurisdiction and standing in another very material way. While both subject matter jurisdiction and standing may be challenged at any time, the right to challenge capacity to sue is waived if it is not timely asserted. See Risvold v. Gustafson, 209 Minn. 357, 296 N.W. 411 *434 (Minn.1941) (the issue of the corporation's right to sue should have been pleaded); Lehigh Valley, 93 Minn. at 434, 101 N.W. at 797 (objection to plaintiff's ability to maintain the action where want of capacity does not appear on the face of the complaint, could only be raised by answer). By failing to object prior to trial to Tudor Oak's incapacity to sue by virtue of its defective registration, appellants waived their right to so object.
Risvold, like the case here, concerned a foreign corporation not licensed to do business in the state. A shareholder, respondent on appeal, had brought an action on behalf of the corporation.
[A]t the trial, appellants moved to dismiss, arguing that inasmuch as the corporation could not have maintained the action, plaintiff was not entitled to sue on its behalf. That point was not made by answer or otherwise before the motion to dismiss. It was then too late. The issue is one of the corporation's right to sue. In order to be of avail to [appellants], it should have been pleaded.
Id. 209 Minn. at 361, 296 N.W. at 413. Lehigh Valley likewise involved an action brought by a foreign corporation; while the corporation alleged in the complaint that it was lawfully doing business in Minnesota, it did not show any proof of compliance with the statutes governing foreign corporations. 93 Minn. at 432, 101 N.W. at 796.
[F]or this reason defendants urge that no recovery can be had by it. We do not concur in this contention. * * * [D]efendants did not answer, or at any time during the trial make the point, that [the corporation] had failed to show a compliance with the statutes. * * * It was clearly incumbent upon defendants affirmatively to allege in their answer a failure on the part of plaintiff to comply with the statutes on this subject, and, having failed to do so, the defense is not available to them.
Id. at 434, 101 N.W. at 796. Challenges to a foreign corporation's right to maintain an action are clearly challenges to its capacity to sue, not to its standing, nor to the court's subject matter jurisdiction. As such, they must be timely raised.
This requirement is supported by long-standing case law concerning incapacity to sue in a variety of contexts. Brazney v. Barnard, 169 Minn. 501, 211 N.W. 949 (Minn. 1927) held that a party could not challenge a verdict on the grounds that the other party
is insane, and therefore is without legal capacity to sue. * * * If such defect appeared from the complaint, it should have been taken advantage of by demurrer, otherwise by answer. Not having been taken advantage of by either demurrer or answer, it is deemed to have been waived.
Id. at 503, 211 N.W. at 950.[3]Dalsgaard v. Meierding, 140 Minn. 388, 168 N.W. 584 (Minn.1918) also found a defendant to have waived the right to challenge the capacity to sue of the plaintiff, an infant, holding that
the defendant, by answering to the merits, had waived the objection that there was a want of capacity in the plaintiff to sue. * * * [W]here there is a want of capacity to sue appearing affirmatively upon the face of the complaint, the defendant may demur thereto. * * * [O]bjections not so taken by demurrer shall be deemed waived.
Id. at 390-91, 168 N.W. at 585. Miller v. Maier, 136 Minn. 231, 161 N.W. 513 (Minn. 1917) found a party to have waived the right to challenge the voting status of contestants of an election.
It is not sufficient after the trial and decision for contestee to say that it does not appear that contestants had the capacity to sue, or its equivalent, to bring this contest. If contestee wished to raise this question, he should have done so by demurrer or answer, otherwise he is deemed to have waived the same.
Id. at 235, 161 N.W. at 515. Similarly, Lee v. Scriver, 143 Minn. 17, 172 N.W. 802 (Minn. 1919) rejected a challenge based on the incapacity *435 to sue of two estates named as plaintiffs.
If the decedents had an interest in the cause of action and their successors in interest have not been made parties, this at most would only amount to a defect of parties, and such defect has been waived by failing to point it out.
Id. at 20, 172 N.W. at 803. Challenge to capacity to sue, arising from whatever cause, must be asserted long before it was asserted here.
Nor is capacity to sue unique; an objection to any defect in parties must be timely raised. See, e.g., Flowers v. Germann, 211 Minn. 412, 420, 1 N.W.2d 424, 428 (Minn. 1941) ("If no such objection is made the defect will be deemed waived. And there is no distinction as to such defect between parties plaintiff and defendant"); Bell v. Mendenhall, 71 Minn. 331, 336, 73 N.W. 1086, 1088 (1898) (where a party elects to proceed with an action without the proper parties before the court, any objection to the parties is deemed waived).
The Minnesota Supreme Court has repeatedly asserted that objections to parties cannot be deferred.
Under our practice, if there be defect of parties, whether plaintiff or defendant, and * * * no such objection is taken advantage of either by demurrer or answer, defendant is deemed to have waived the same. He cannot later raise the objection by motion for dismissal, for judgment on the pleadings, for direction of verdict, or by objection to the evidence. * * * Here no such preliminary steps were taken. The case was tried on its merits and disposed of upon the issues presented by the pleadings.
Serr v. Biwabik Concrete Aggregate Co., 202 Minn. 165, 183, 278 N.W. 355, 365 (Minn. 1938). Reargument was therefore denied. Id. Where defect of parties was raised not in the pleadings but during trial by a motion to dismiss and a motion to amend the answer, the denial of these motions was upheld. Hanson v. Bowman, 199 Minn. 70, 74-75, 271 N.W. 127, 129 (Minn.1937).
[C]onsidering that the case was half tried before there was any attempt to plead defect of parties, * * * we think there was no abuse of discretion in denying the amendment asked.
Id. The Minnesota Supreme Court has denied rehearing where
[t]he defect of parties was clearly waived by defendant. At no time during the trial of the action was the point called to the attention of the trial court, except at the close of the evidence, and then only by a request for an instructed verdict in defendant's favor.
Mason v. St. Paul Fire & Marine Ins. Co., 82 Minn. 336, 341, 85 N.W. 13, 15 (Minn. 1901).
Finally, in a case with a time frame similar to that here, the eighth circuit held that the right to object to a defect in parties plaintiff was waived "unless the issue is promptly raised." Capital Fire Ins. Co. of California v. Langhorne, 146 F.2d 237, 243 (8th Cir. 1945).
When the present action was begun the appellant made no objection that there was a defect of parties plaintiff. * * * Approximately two years elapsed between the institution of appellee's action and the date of its trial. During this time the appellant never raised the objection based upon a defect of parties. * * * The issue of a defect of parties plaintiff was put into the case at the beginning of its trial.
Id. at 242-43. The defendant was found to have waived the right to challenge a defect in parties by failing to raise it prior to trial.
Here, the district court concluded that Tudor Oaks is entitled to summary judgment as a matter of law because appellants failed to challenge its capacity to sue before trial, during the trial, or at any time prior to the post-appeal entry of judgment. The district court noted that the circumstances giving rise to Tudor Oaks' alleged incapacity to sue were a matter of public record throughout the first trial; therefore, appellants could unquestionably have substantiated a challenge to Tudor Oaks' capacity to sue.
The district court pursued an analysis of Minn.Stat. § 548.14 to reach its conclusion that appellants' failure to timely challenge *436 Tudor Oaks' right to maintain an action cannot be excused by fraud, because the information allegedly fraudulently concealed from appellants was in fact available to them as a matter of public record. Without resorting to the statute, we reach the identical conclusion: appellants' failure to timely challenge Tudor Oaks' right to maintain an action was in fact a failure to timely challenge its capacity to sue, and waived appellants' right to assert the challenge.
Appellants argue that Halloran v. Blue & White Liberty Cab Co., 253 Minn. 436, 92 N.W.2d 794 (Minn.1958) mandates remanding this case to the district court with instructions to vacate the underlying judgment.[4]Halloran was an appeal from the denial of a motion to amend a judgment obtained against a nonexistent corporation, brought by the judgment creditors after they had first made two unsuccessful attempts to bring an action against the real defendants. The Minnesota Supreme Court remanded for further findings as to whether the real defendants, their insurers and their attorneys had intentionally deceived or misled the court, after noting that any such intentional deception as to the true identity of a litigant would constitute a fraud upon the court. Id. at 443, 92 N.W.2d at 798-99.
We find that appellants' reliance on Halloran is misplaced, since there are critical distinctions between this case and Halloran. First, by asking this court to remand with instructions to vacate, appellants seek far more than the supreme court granted in Halloran. There, even though there was no question that the defendant named in the judgment did not exist, the supreme court did not permit amendment of the judgment with the names of the real defendants; it remanded for further findings. By remanding with instructions to vacate the underlying judgment, as appellants would have us do, we would in effect nullify the results of some eight years of litigation on the basis of one alleged deception, although the true facts were readily available. Secondly, the appellants in Halloran asked an appellate court to rectify a defect in parties in order to give effect to a trial court judgment; appellants here ask this court to use a defect in parties as a basis for setting aside a district court judgment. Finally, the identity question in Halloran concerned a party who was a defendant throughout, from whom recovery was sought and obtained, so the issue of that party's capacity to sue never arose; here, the identity question was raised to challenge the capacity to sue of a party variously denominated as both plaintiff and defendant, and now entitled to recover.
We would note that it is the entitlement to recovery, not the actual capacity to recover by enforcing the judgment, which is the issue here. Like the panel of this court which decided the previous appeal in this matter, we do not reach the issue of who will enforce this judgment or how it will be enforced. See McLaughlin, unpub. op. at 9 n. 3.
Finally, because we affirm the award of summary judgment for Tudor Oaks and because Tudor Oaks did not file a notice of review, we do not address Tudor Oaks' allegation that the district court erred in determining that appellants could bring claims pursuant to Minn.Stat. § 548.14 and Minn. R.Civ.P. 60.02 in the same action.

DECISION
Appellants, by failing to challenge Tudor Oaks' capacity to sue throughout protracted litigation until after the final entry of judgment, waived their right to that challenge. Tudor Oaks is entitled to summary judgment dismissing appellants' motion to vacate.
Affirmed.
DANIEL F. FOLEY, Judge (dissenting).
I respectfully dissent, and would reverse and remand to the trial court to vacate the judgment that was entered in favor of Tudor Oaks, a non-entity.
This action was commenced by S.B. McLaughlin in June 1987. At that time, Tudor Oaks, a limited partnership, and ABIO, Tudor Oaks' general partner, were *437 named as defendants, along with Cochrane and KSCS. In September 1989, however, S.B. McLaughlin became the sole limited partner of Tudor Oaks and the sole shareholder of ABIO. On January 10, 1992, Tudor Oaks and ABIO were realigned with S.B. McLaughlin as plaintiffs in S.B. McLaughlin's action against Cochrane and KSCS.
At the commencement of the action in June 1987, Tudor Oaks was an Ontario limited partnership, and ABIO, Tudor Oaks' general partner, was a Minnesota corporation. Before the realignment of the parties occurred in January 1992, however, Tudor Oaks' status as an Ontario limited partnership was dissolved. Furthermore, on October 11, 1991, ABIO's status as a Minnesota corporation was dissolved. No effort was made to continue ABIO in existence under Minnesota law. According to Ontario law, the dissolution of a corporate general partner automatically dissolves a limited partnership unless the partnership is continued by the remaining general partners pursuant to the partnership agreement or by consent. Ontario Limited Partnerships Act, 6 R.S.O., ch. L. 16 § 21 (1990). Because there was no such provision in Tudor Oaks' partnership agreement and because there were no remaining general partners, effective October 1991, Tudor Oaks' status as a limited partnership ceased.
Therefore, at the time of the realignment of the parties in January 1992, Tudor Oaks was a nonexistent limited partnership  a nonentity. As I view the record, no one seriously disputes the fact that Tudor Oaks is a phantom judgment creditor, now and when judgment was entered in its favor.
At the time the pleadings were amended and the parties realigned, the complaint realleged the existence of Tudor Oaks and ABIO as legal entities. However, the undisputed fact is that the complaint was pursued by Tudor Oaks and ABIO, who were actually nonexistent plaintiffs. A suit that is brought in the name of that which is not a legal entity is a mere nullity. J.C. Peacock, Inc. v. Hasko, 184 Cal.App.2d 142, 7 Cal.Rptr. 490, 496 (1960). A plaintiff who is not a legal entity is without legal capacity to sue. Id.; Robertson v. Brown, 75 N.D. 109, 25 N.W.2d 781, 784 (N.D.1947); Philadelphia Facilities Management Corp. v. Biester, 60 Pa.Cmwlth. 366, 431 A.2d 1123, 1127 (1981); see St. Paul Typothetae v. St. Paul Bookbinders' Union No. 37, 94 Minn. 351, 357, 102 N.W. 725, 726 (1905) (to be entitled to sue, a party must be a natural or an artificial person).
Minnesota law provides that a foreign limited partnership may not sue in this state until it has registered in the state. Minn. Stat. § 322A.75(a) (1992); see also Minn.Stat. § 322A.73 (1992) (foreign limited partnership must correct registration application when any facts change). At the time Tudor Oaks was realigned in this action as a plaintiff, it could not have been properly registered in this state because it was a nonexistent entity.
The trial court placed on Cochrane and KSCS the burden of proving the nonexistence of Tudor Oaks as a limited partnership. The court concluded that the failure of Cochrane and KSCS to timely raise the issue of capacity to sue must permit the judgment to stand.[1] But the interesting inquiry then follows: How does a phantom creditor enforce its judgment?
The trial court originally entered judgment in favor of S.B. McLaughlin and Tudor Oaks. Judgment was entered in favor of Tudor Oaks on September 24, 1992 in the sum of $1.628 million, later modified as to amount by this court. On appeal, this court reversed the portion of the judgment in favor of S.B. McLaughlin  this court reasoned that no fiduciary relationship existed between Cochrane and S.B. McLaughlin to support a judgment in S.B. McLaughlin's favor. Therefore, the only judgment remaining in this action is in favor of Tudor Oaks, modified by this court in a prior appeal. The court has inherent power to vacate a judgment that is a nullity; a void judgment may be vacated *438 anytime. Peterson v. Eishen, 512 N.W.2d 338, 341 (Minn.1994); accord Simonds v. Norwich Union Indem. Co., 73 F.2d 412, 415 (8th Cir.1934), cert. denied, 294 U.S. 711, 55 S.Ct. 507, 79 L.Ed. 1246 (1935).
The cases cited by the majority are distinguishable, since they involve entities or individuals that actually exist. Here, it is conceded that when judgment was entered in its favor, Tudor Oaks was a nonexistent entity. Because the judgment has been entered in favor of a nonexistent entity, the possibility of enforcement of the judgment is equally nonexistent, and the judgment should be discharged of record. The judgment in favor of Tudor Oaks is a void judgment and "cannot gain validity by the passage of time." Eishen, 512 N.W.2d at 341.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.
[1] In Duenow, the trial court granted default judgment beyond the "issues made by the pleadings." 223 Minn. at 511, 27 N.W.2d at 425. The Supreme Court, in vacating the default judgment and reversing to permit defendants to answer, stated that "relief which may be awarded against a defendant who does not answer must be limited in kind and degree to that specifically demanded in the complaint." Id.
[2] We note that prior to its acquisition by the then sole plaintiff, S.B. McLaughlin, Tudor Oaks was not maintaining an action as "maintaining" has been defined by the Supreme Court. "To `maintain' an action is to uphold, continue on foot, and keep from collapse a suit already begun, or to prosecute a suit with effect. George Moore Ice Cream Co. v. Rose, Ga., 289 U.S. 373 [53 S.Ct. 620, 77 L.Ed. 1265 (1933)]." Black's Law Dictionary 859 (5th ed. 1979).
[3] Minn.R.Civ.P. 7.01 terminated the use of demurrers by providing for pleading only by complaint and answer. However, "[a]n examination of the advisory committee's notes on Rule 7.01 * * * indicates that the primary purpose of abolishing demurrers * * * was essentially one to effect a change of terminology or form and not of function." House v. Hanson, 245 Minn. 466, 468, 72 N.W.2d 874, 875 (Minn.1955).
[4] This is the sole relief ever requested by appellant KSCS and the sole relief requested in the conclusion to his brief by appellant Cochrane, although at one point in the brief he requests "at a minimum" remanding for further findings.
[1] Although capacity ordinarily should be raised by specific negative averment, capacity to sue was not an issue at the time of the original complaint by S.B. McLaughlin. At the time of the original complaint, Tudor Oaks and ABIO were defendants, rather than plaintiffs. Furthermore, at that time neither Tudor Oaks nor ABIO had been dissolved. Once they were dissolved, they ceased to exist as legal entities.