# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-1544

_____

| | |
|---|---|
| In re:  John A. Cochrane,<br>               Debtor.<br><br>---------------------<br><br>Tudor Oaks Limited Partnership,<br><br>                    Appellee,<br><br>       v.<br><br>John Alexander Cochrane,<br><br>              Appellant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>* Appeal from the United States<br>* District Court for the<br>* District of Minnesota<br>*<br>*<br>*<br>*<br>* |

_____

Submitted: December 11, 1996

Filed:   September 5, 1997

_____

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

John A. Cochrane, a Minnesota attorney and Chapter 7 debtor in bankruptcy, appeals from a final order entered in the United States District Court[1] for the District of Minnesota affirming a decision of the United States Bankruptcy Court[2] for the District of Minnesota (hereinafter the bankruptcy court) granting summary judgment in favor of Tudor Oaks Limited Partnership (Tudor Oaks) and holding as a matter of law that Cochrane's debt to Tudor Oaks, which has been reduced to a final state court judgment, is nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4). Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane), Civ. No. 3-95-389 (D. Minn. Feb. 6, 1996), aff'g 179 B.R. 628 (Bankr. D. Minn. 1995). For reversal, Cochrane argues that the bankruptcy court erred in holding that (1) Tudor Oaks had standing to bring the present adversary proceeding in bankruptcy court, (2) Cochrane is collaterally estopped from relitigating factual findings upon which the underlying state court judgment was based, and (3) 11 U.S.C. § 523(a)(4) applies as a matter of law to bar discharge of Cochrane's judgment debt to Tudor Oaks. For the reasons discussed below, we affirm.

## Background

The judgment debt that is the subject of this litigation arose out of a Minnesota state court action (hereinafter referred to as "the underlying state court action") which was filed in 1987 by S.B. McLaughlin & Co. (McLaughlin), a former Tudor Oaks partner. McLaughlin originally sued Cochrane, Tudor Oaks, K.S.C.S. Properties, Inc. (KSCS), and others in Minnesota state court on a theory of breach of fiduciary duties. At the time the action was commenced, Tudor Oaks was a limited partnership chartered in Ontario, Canada. The parties were subsequently realigned, and Tudor Oaks became

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

[2]The Honorable Gregory F. Kishel, United States Bankruptcy Judge for the District of Minnesota.

a plaintiff while Cochrane and KSCS remained defendants. The case proceeded to trial before a jury in the summer of 1992. By that time, Tudor Oaks had dissolved, but the state trial court was not informed of the dissolution. At trial, the jury rendered a special verdict which found, among other things, that Cochrane had breached a fiduciary duty to Tudor Oaks resulting in damages of $1.628 million and that Cochrane and KSCS had conspired to breach fiduciary duties to Tudor Oaks resulting in damages of $3.52 million. The state trial court entered judgment against Cochrane awarding Tudor Oaks $1.628 million plus prejudgment interest and further entered judgment against KSCS awarding Tudor Oaks $3.52 million plus prejudgment interest. On appeal, the Minnesota Court of Appeals, among other things, affirmed the finding that Cochrane had breached his fiduciary duties, ordered a reduction in the total amount of damages awarded to Tudor Oaks from Cochrane and KSCS, and remanded the case to the state trial court with directions.[3] Accordingly, the state trial court, on remand, entered final judgment holding Cochrane and KSCS jointly and severally liable to Tudor Oaks in the amount of $1,722,025.52.[4] S.B. McLaughlin & Co. v. Cochrane, No. 87-11035 (Minn. Dist. Ct. Apr. 11, 1994) (amended order).

Cochrane then brought a separate action in Minnesota state court (hereinafter referred to as "Cochrane's independent state court action") seeking to have Tudor Oaks's judgment against him and KSCS vacated on grounds that Tudor Oaks's dissolution during the pendency of the underlying state court action deprived the trial court of subject matter jurisdiction or that the judgment was obtained by fraud. The trial court in Cochrane's independent state court action entered summary judgment in favor of Tudor Oaks and dismissed Cochrane's claims. Cochrane v. Tudor Oaks

---

[3]The Minnesota Court of Appeals also reversed a judgment in favor of McLaughlin.

[4]The total award included $1,256,666.00 in damages, $465,359.52 in prejudgment interest, and $22,542.70 in costs and disbursements.

Condominium Project, No. 93-16553 (Minn. Dist. Ct. July 6, 1994). The state trial court reasoned: Cochrane's failure to raise a capacity-to-sue defense during the underlying state court action resulted in a waiver, id. at 9; the record failed as a matter of law to establish that Tudor Oaks perpetrated a fraud on the trial court in the underlying state court action or that the judgment in the underlying state court action was obtained by fraud, id. at 11-12; and, finally, although Tudor Oaks did not have a right to maintain the action, McLaughlin had a right to continue the action commenced before Tudor Oaks's dissolution, id. at 14-15. On March 28, 1995, the Minnesota Court of Appeals affirmed the dismissal of Cochrane's independent state court action. Id., 529 N.W.2d 429 (Minn. Ct. App. 1995). The Minnesota Court of Appeals held that, in light of the protracted nature of the underlying litigation and the fact that Tudor Oaks's dissolution had long been a matter of public record, Cochrane's failure to challenge Tudor Oaks's capacity to sue until after the entry of final judgment resulted in a waiver. Id. at 435-36.

In the meantime, in December 1992, Cochrane filed for Chapter 11 relief in bankruptcy in the United States Bankruptcy Court for the Middle District of Florida. Cochrane listed Tudor Oaks among his creditors on his Schedule F. The Florida bankruptcy court transferred the case to the District of Minnesota. The bankruptcy court in Minnesota granted Tudor Oaks's request for relief from the automatic stay under 11 U.S.C. § 362, thereby permitting the underlying state court action to proceed to final judgment. The bankruptcy court also converted Cochrane's Chapter 11 bankruptcy case to a Chapter 7 proceeding. On May 24, 1994, following the entry of final judgment in the underlying state court action, Tudor Oaks -- by and through its former partner and so-called "liquidating trustee," McLaughlin -- brought the present adversary proceeding in Cochrane's bankruptcy case and moved for summary judgment, claiming that Cochrane's judgment debt to Tudor Oaks is nondischargeable by operation of 11 U.S.C. § 523(a)(4). Section 523(a)(4) provides: "A discharge [in bankruptcy] does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Upon

-4-

review, the bankruptcy court considered final and binding certain factual findings made in the underlying state court action. In reciting "the pertinent facts that were settled by the Minnesota state courts' decisions," 179 B.R. at 631, the bankruptcy court noted the following. Cochrane had been engaged by Tudor Oaks and two of the three Tudor Oaks partners (other than McLaughlin), to represent them in a bank foreclosure on a multimillion dollar condominium real estate development project that had failed financially. He was to be paid a flat fee of $20,000.00. Id. Cochrane purported to assemble a group of investors, incorporated as KSCS, to purchase the failed project at the sheriff's sale. Cochrane led his clients to believe that a 20% interest in the project would be retained by Tudor Oaks, with the remainder going to KSCS (receiving 60%) and two individual KSCS shareholders (together receiving 20%). To the contrary, however, Cochrane kept for himself as a "fee" the 20% interest which his clients expected to retain, and he also failed to disclose to his clients that he was a 25% shareholder in KSCS. Id. at 631-32. Moreover, the bankruptcy court noted, the jury found that Cochrane breached his fiduciary duties as a result of: (1) his personal participation in the purchase of the sheriff's certificate as a shareholder of KSCS; (2) his involvement in the transaction that defeated Tudor Oaks's expectation that it would retain the 20% interest in the real estate; and (3) his charge of what amounted to a 20% contingency fee. Id. at 632. In light of these facts, the bankruptcy court concluded that the judgment debt Cochrane owed to Tudor Oaks was "for fraud or defalcation while acting in a fiduciary capacity." Id. at 632-36. In reaching this conclusion, the bankruptcy court determined that the attorney-client relationship involves fiduciary duties and that the term "defalcation," as used in § 523(a)(4), includes innocent and negligent as well as intentional wrongful acts. Id. at 634-35. The bankruptcy court thus held that there was no genuine issue of material fact and Tudor Oaks was entitled to judgment as a matter of law on its claim that Cochrane's judgment debt was nondischargeable by operation of 11 U.S.C. § 523(a)(4). Id. at 636. On appeal, the district court summarily affirmed. Cochrane appealed.

## Discussion

We review the bankruptcy court's grant of summary judgment <u>de novo</u>. Our review is the same as that of the district court. Summary judgment was properly granted if, assuming all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>see, e.g.</u>, <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Get Away Club, Inc. v. Coleman</u>, 969 F.2d 664, 666 (8th Cir. 1992); <u>St. Paul Fire & Marine Ins. Co. v. FDIC</u>, 968 F.2d 695, 699 (8th Cir. 1992). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. <u>Crain v. Board of Police Comm'rs</u>, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

<u>Standing</u>

Cochrane first argues that the bankruptcy court erred in failing to dismiss Tudor Oaks's adversary proceeding on the ground that Tudor Oaks, a dissolved partnership, lacked standing to bring this proceeding in bankruptcy court. As stated above, Tudor Oaks's former partner and so-called "liquidating trustee," McLaughlin, filed this adversary proceeding on behalf of Tudor Oaks. Nevertheless, Cochrane argues that, because Tudor Oaks was dissolved by operation of Ontario law (the law applicable to the partnership) prior to his bankruptcy filing, it is a non-existent entity and neither Tudor Oaks nor McLaughlin can engage in the present bankruptcy litigation.

In rejecting Cochrane's standing argument, the bankruptcy court explained as follows:

[r]egardless of whether the named party-plaintiff [i.e., Tudor Oaks] is a valid, subsisting legal entity with capacity to sue or be sued, its one remaining partner has a right under Ontario law to wind up the affairs and to continue litigation under its name to do so. During the pendency of this adversary proceeding, the Hennepin County District Court held to that effect, in ruling against [Cochrane] in his independent lawsuit for relief from the original judgment in [Tudor Oaks's] favor. [Cochrane] is collaterally bound by this ruling, even though he apparently has an appeal from that judgment pending.

179 B.R. at 636 n.17 (citations omitted).

We first consider the bankruptcy court's collateral estoppel rationale with respect to the standing issue. The application of collateral estoppel is an issue of law which we review de novo. United States v. Brekke, 97 F.3d 1044, 1046-47 (8th Cir. 1996), cert. denied, 117 S. Ct. 1281 (1997). The bankruptcy court did not err in observing that collateral estoppel may apply to a trial court's ruling on the merits of an issue notwithstanding the pendency of an appeal from that ruling.[5] See Morrell & Co. v. Local Union 304A, United Food & Commercial Workers, 913 F.2d 544, 563-64 (8th Cir. 1990) (Morrell) (finality in the context of issue preclusion may be satisfied where the litigation has reached such a stage that "the court sees no really good reason for permitting it to be litigated again"), cert. denied, 500 U.S. 905 (1991). However, although we agree in theory with the bankruptcy court's view that Cochrane could be collaterally bound by the state trial court's disposition of the legal issues underlying his

---

[5]Actually, at the time the bankruptcy court filed its opinion on March 30, 1995, the Minnesota Court of Appeals had, unbeknownst to the bankruptcy court, only two days earlier affirmed the state trial court's order dismissing Cochrane's independent state court action. Cochrane v. Tudor Oaks Condominium Project, 529 N.W.2d 429, 436 (Minn. Ct. App. 1995) (affirming on the ground that Cochrane, "by failing to challenge Tudor Oaks's capacity to sue throughout protracted litigation, waived [his] right to that challenge").

claim that Tudor Oaks lacked the capacity to maintain its litigation against him, we decline to apply principles of issue or claim preclusion in the present appeal because the capacity-to-sue defense that has been raised in this bankruptcy case is materially different from the capacity-to-sue defense that was untimely raised (and thus waived) in the underlying state court action. Cochrane's state court capacity-to-sue defense, which he belatedly raised in his independent state court action, asserted that Tudor Oaks lacked the capacity to continue pursuing the underlying state court litigation after Tudor Oaks dissolved. By contrast, in the present case, Cochrane is now challenging Tudor Oaks's post-dissolution capacity to bring an adversary proceeding to avoid the discharge of a debt in federal bankruptcy court. Thus, we focus on the bankruptcy court's primary rationale on this issue, that "[r]egardless of whether the named party-plaintiff [i.e., Tudor Oaks] is a valid, subsisting legal entity with capacity to sue or be sued, its one remaining partner has a right under Ontario law to wind up the affairs and to continue litigation under its name to do so." We review this rationale on the merits.

Upon <u>de novo</u> review, we apply Ontario law in determining whether Tudor Oaks had the capacity to bring the present bankruptcy litigation. The Ontario Partnership Act, § 38, provides in relevant part:

> After the dissolution of a partnership, the authority of each partner to bind the firm and other rights and obligations of the partners continue despite the dissolution so far as is necessary to wind up the affairs of the partnership and to complete transactions begun but unfinished at the time of the dissolution.

Applying the above-quoted standard to the circumstances of the present case, we agree with the bankruptcy court that McLaughlin's efforts in bringing this adversary proceeding on behalf of Tudor Oaks constitutes a partner's exercise of rights "necessary to wind up the affairs of the partnership and to complete transactions begun

-8-

but unfinished at the time of the dissolution." Thus, McLaughlin has standing to litigate this bankruptcy matter in the name of Tudor Oaks.

Application of collateral estoppel to factual issues

Next, Cochrane argues that the bankruptcy court erred in holding that, according to principles of collateral estoppel, he is bound by certain factual findings made in the underlying state court action. He maintains that those findings have no preclusive effect because he was denied a full and fair opportunity to litigate the pertinent issues. As to the three jury findings identified by the bankruptcy court, which involved instances where Cochrane breached fiduciary duties to his clients, Cochrane argues that there was no factual basis for the bankruptcy court's findings. He also argues that there was never any finding as to whether the state court judgment was obtained by fraud.

We hold that the bankruptcy court did not err in applying the doctrine of collateral estoppel to the jury's findings regarding Cochrane's breach of fiduciary duties. To begin, it is now well settled that "the principle of collateral estoppel applies in bankruptcy court to bar the relitigation of factual or legal issues that were determined in a prior state court action." Johnson v. Miera (In re Miera), 926 F.2d 741, 743 (8th Cir. 1991) (citing Grogan v. Garner, 498 U.S. 279 (1991)). In order for a factual issue to be barred from relitigation in a subsequent proceeding, the following four elements must be present: (1) "the issue sought to be precluded must be the same as that involved in the prior action"; (2) "the issue must have been litigated in the prior action"; (3) "the issue must have been determined by a valid and final judgment"; and (4) "the determination must have been essential to the prior judgment." Id. In the present case, issues concerning Cochrane's breach of his fiduciary duties were fully, fairly, and actually litigated and were essential to the final judgment entered in the underlying state court action. We therefore hold that the bankruptcy court did not err in concluding that Cochrane is bound by the jury's findings.

To the extent Cochrane argues that there was never a finding on the issue of whether the state court judgment was obtained by fraud, he is bound by the state trial court's findings in his independent state court action that -- with reference to the underlying state court action -- no fraud upon the court occurred in connection with Tudor Oaks's dissolution and, moreover, the judgment was not obtained by fraud. Cochrane v. Tudor Oaks Condominium Project, No. 93-16553, slip op. at 11-15 (Minn. Dist. Ct. July 6, 1994). Although the Minnesota Court of Appeals affirmed solely upon a finding of waiver, we hold that the above-noted fraud-related findings in Cochrane's independent state court action were final for purposes of applying the doctrine of collateral estoppel because that litigation had reached such a stage that, in our view, there is "no really good reason for permitting [those issues] to be litigated again." Morrell, 913 F.2d at 563-64.

Nondischargeability under § 523(a)(4)

Cochrane challenges the bankruptcy court's legal conclusion that his conduct, which gave rise to the judgment in the underlying state court action, constituted fraud or "defalcation" within the meaning of 11 U.S.C. § 523(a)(4). Focusing primarily on the meaning of the term "defalcation," Cochrane argues that the bankruptcy court erred in interpreting the statute to include innocent or negligent misdeeds rather than solely intentional wrongs, such as fraud, embezzlement, or larceny. We disagree.

To begin, "[w]hether a relationship is a 'fiduciary' one within the meaning of section 523(a)(4) is a question of federal law." Lewis v. Scott, 97 F.3d 1182, 1185 (9th Cir. 1996). "[T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." Id. In general, an attorney-client relationship is the type of relationship for which the attorney's breach of fiduciary duties to the client may give rise to a finding of a "defalcation" within the meaning of § 523(a)(4). See, e.g., FDIC v. Mmahat, 907 F.2d 546, 550 (5th Cir. 1990), cert. denied, 499 U.S. 936 (1991). In

-10-

the present case, Cochrane's relationship with his clients existed before and notwithstanding the wrongdoing for which judgment against him was procured or, in other words, without reference to his wrongdoing. Cochrane had been engaged by Tudor Oaks and two Tudor Oaks partners to represent them in the bank foreclosure on Tudor Oaks's failing multimillion dollar condominium project. His clients understood that he would assemble a group of investors (i.e., KSCS) to buy out the project while allowing Tudor Oaks to retain a 20% interest. Cochrane instead kept the 20% interest for himself as a "fee" and also failed to disclose to his clients that he was a 25% shareholder in KSCS. He breached his fiduciary duties by failing to disclose his status as a KSCS shareholder and by usurping Tudor Oaks's expected 20% interest in the real estate, which, in fact, he kept for himself. In light of these facts, the bankruptcy court did not err in finding, for purposes of applying § 523(a)(4), that he had committed an act by defalcation while acting in a fiduciary capacity. See, e.g., FDIC v. Mmahat, 907 F.2d at 550 (attorney who acted improperly to enrich himself at expense of his client was properly denied discharge of debt in bankruptcy under § 523(a)(4)).

We also reject Cochrane's argument that the bankruptcy court erroneously defined "defalcation" to include innocent or negligent misdeeds rather than solely intentional wrongs such as fraud, embezzlement, or larceny. While we doubt Cochrane could demonstrate that his acts were innocent or merely negligent, that question is, in any event, not dispositive because a finding of "defalcation" does not require evidence of intentional fraud or other intentional wrongdoing.

> Defalcation is defined as the "misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds." Under section 523(a)(4), defalcation "includes the innocent default of a fiduciary who fails to account fully for money received." . . . An individual may be liable for defalcation without having the intent to defraud.

<u>Lewis v. Scott</u>, 97 F.3d at 1186 (citations omitted). The bankruptcy court did not err in holding that Cochrane's debt to Tudor Oaks resulted from an act of defalcation while acting in a fiduciary capacity. The judgment debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## Conclusion

For the reasons discussed above, we affirm the order of the district court affirming the bankruptcy court's grant of summary judgment in favor of Tudor Oaks on its claim that Cochrane's judgment debt is nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.