In re Elizabeth NAIL, Debtor.

Arvest Mortgage Company, Plaintiff

v.

Elizabeth Nail, Defendant.

Bankruptcy No. 5:09–bk–72059.
Adversary No. 5:09–ap–7121.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

April 9, 2010.

Burton E. Stacy, Jr., Hood & Stacy, P.A., Bentonville, AR, for Plaintiff.

Theresa L. Pockrus, The Nixon Law Firm, Fayetteville, AR, for Defendant.

## ORDER

BEN T. BARRY, Bankruptcy Judge.

Before the Court is the complaint of Arvest Mortgage Company [Arvest] to determine the dischargeability of a debt owed to Arvest under 11 U.S.C. § 523(a)(2) and (a)(4) and the debtor's answer to the complaint. The Court heard the complaint on February 25, 2010, and at the conclusion of the trial took the complaint under advisement. During the trial, the debtor moved for a directed verdict as to the § 523(a)(2) cause of action, which the Court granted. The debtor also ob-jected to Arvest's standing to bring the complaint and moved for dismissal of the complaint for failure to prosecute in the name of the real party in interest. For the reasons stated below, the Court grants Arvest's complaint to determine the dis-chargeability of debt as to its § 523(a)(4) cause of action subject to the conditions stated.

### Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The fol-lowing opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### Background

The gravamen of Arvest's complaint re-lates to a settlement the debtor received as a result of a lawsuit the debtor filed against the builder of her residence locat-ed in Farmington, Arkansas. In order for the debtor to purchase the residence, on July 7, 2006, Arvest extended a Note to the debtor and the debtor executed a Mortgage to Arvest. According to Vicky Smith, a vice president at Arvest, the debt-or missed her February 2007 payment to Arvest. Arvest contacted the debtor and, as a result of that contact, offered the debtor a six month forebearance on her payments so the debtor could file a lawsuit against the builder for the defects that were found in the residence. The lawsuit was subsequently filed in state court in February 2007. Arvest extended its fore-bearance for an additional six months to January 2008 based on the on-going litiga-tion in state court. According to Arvest, payments never resumed after the fore-bearance period ended and it filed its fore-closure action against the property in March or April 2008. Arvest purchased

the property at foreclosure and transferred title to Fannie Mae in accordance with its servicing agreement.[1] In July 2008, Arvest discovered that the debtor had received a monetary settlement after arbitration of the debtor's state court lawsuit.[2] The debtor testified that she used the funds to pay her attorney fees relating to the state court litigation, to pay for remodeling and repair work on her new residence, and to pay off some credit card bills.

According to Arvest, the debtor was required to submit the settlement funds to Arvest pursuant to an Assignment of Miscellaneous Proceeds clause contained in the Mortgage that secured a Note between Arvest and the debtor relating to the purchase of the residence. According to the debtor, the language contained in the assignment clause did not extend to the settlement proceeds because specific language relating to proceeds received as a result of a builder's misrepresentations was not included in the assignment clause and she was entitled to use the proceeds. The debtor's counsel stated that while the debtor may have breached her contract with Arvest, the debt is dischargeable because she did not commit fraud or defalcation while acting in a fiduciary capacity because the mortgage is not a trust document, and she did not embezzle the funds because the funds did not belong to Arvest.

The relevant language in the mortgage relates to (1) the definition of miscellaneous proceeds and (2) the assignment clause that assigns miscellaneous proceeds to Ar-

vest. The mortgage defines "Miscellaneous Proceeds" as

> any compensation, settlement, award of damages, or proceeds paid by any third party ... for; (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

Pl's. Ex. 2, p. 2 of 15 ¶ (L). The Assignment of Miscellaneous Proceeds clause states, in relevant part, "All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender." Pl's Ex. 2, p. 9 of 15 ¶ 11.

### Standing and Real Party in Interest

At the conclusion of the first witness's testimony, the debtor moved to dismiss the complaint for failure to prosecute in the name of the real party in interest, Fannie Mae. The debtor also stated in her post-trial brief that Arvest did not have standing to bring this action. The Court will address both of these arguments before discussing the substantive complaint. At the time the settlement was entered into (January 2008) and the settlement proceeds given to the debtor, Arvest held a mortgage on the property. Under its agreement with Fannie Mae, Arvest would pursue foreclosure of the property to obtain title, and then transfer title to Fannie Mae. Regardless, Arvest is the party that filed the foreclosure action against the debtor *after* the debtor settled her state court lawsuit. According to Smith, Arvest was the servicing agent for Fannie Mae and was required to prosecute the turn-

---

**1.** Although the warranty deed transferring title to Fannie Mae was not offered into evidence, it appears that the transfer was made after the foreclosure proceeding was complete but prior to Arvest filing the adversary proceeding. At the time Arvest commenced its

foreclosure action against the property, it held the title to the property.

**2.** The debtor entered into a Full and Final Release on January 28, 2008, and received $65,000 from the builder. Debtor's Ex. 2.

over of miscellaneous proceeds according to its agreement with Fannie Mae.

■ As the mortgage servicer, Arvest had standing "'to participate in a bankruptcy case by virtue of its pecuniary interest in collecting payments under terms of note and mortgage.'" *In re O'Kelley,* 420 B.R. 18, 23 (D.Haw.2009) (discussing constitutional and prudential standing and quoting *In re Eads,* 417 B.R. 728, 739 n. 12 (Bankr.E.D.Tex.2009)). Additionally, a servicer's possession of a note (rather than being its "legal holder") may also be sufficient to establish standing. *Id.*; *see also In re Eads,* 417 B.R. 728, 739 n. 12 (Bankr. E.D.Tex.2009) (citing *In re Kang Jin Hwang,* 396 B.R. 757, 769 (Bankr.C.D.Cal. 2008)). Because Arvest was in possession of its note and was the servicer of the loan for Fannie Mae, the Court finds that Arvest has standing in this action.

■ Finding that Arvest is the real party in interest is more problematic. Arvest and the debtor entered into the Note and Mortgage on July 7, 2006. Pl's Exs. 1 and 2. However, Arvest later transferred its interest in the property by warranty deed to Fannie Mae after Arvest had acquired the property through foreclosure. Although Arvest may have standing to participate in the lawsuit, the Court finds that it is not the real party in interest based on its transfer of the property to Fannie Mae. According to Smith, Arvest's only interest in the adversary proceeding at this point is whether Fannie Mae is going to absorb the loss; Arvest is required to pursue the cause of action under its agreement with Fannie Mae.

Although the Court finds that Arvest is not the real party in interest, that is not enough to defeat Arvest's adversary proceeding at this time. According to Federal Rule of Bankruptcy Procedure 7017, which incorporates Federal Rule of Civil Procedure 17, "[t]he court may not dismiss

an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted in the action." Fed. R. Bank. P. 7017(a)(3). If the ratification, joinder, or substitution takes place, the adversary proceeding will proceed as if it had been originally commenced by Fannie Mae. *Id.* Accordingly, the Court will allow Fannie Mae 30 days from the date of this order to ratify, join, or be substituted in this adversary proceeding. If Fannie Mae does not so comply, the complaint will be dismissed on the debtor's objection. If Fannie Mae does comply, this order will be effective *nunc pro tunc* to the date of the order.

§ 523(a)(4): Defalcation While Acting in a Fiduciary Capacity

The remaining issue before the Court is the determination of the dischargeability of the debt under § 523(a)(4); specifically, whether the debt is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. This subsection is comprised of three separate causes of action: (1) fraud or defalcation while acting in a fiduciary capacity, (2) embezzlement, and (3) larceny.

■ The first cause of action requires fraud or defalcation while acting in a fiduciary capacity. A defalcation is "the misappropriation of funds held by a fiduciary and includes the innocent default of a fiduciary who fails to account fully for money received." *International Fidelity Ins. Co. v. Herndon (In re Herndon),* 277 B.R. 765, 768 (Bankr.E.D.Ark.2002) (citing *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane),* 124 F.3d 978, 984 (8th Cir.1997)). The issue of whether a relationship is a fiduciary relationship within the meaning of § 524(a)(4) is a matter of federal law. *Cochrane,* 124 F.3d at 984. According to

the Eighth Circuit, the code's reference to a "fiduciary" applies only to trustees of express trusts, or through a statute or other state rule creating fiduciary status that is "cognizable" in bankruptcy proceedings. *Barclays Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878 (8th Cir.1985) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934) for the express trust reference); *see also In re Wright*, 266 B.R. 848 (Bankr.E.D.Ark.2001) (recognizing the requirement of (1) an express or statutory trust; (2) a fiduciary obligation to that trust; and (3) a breach of that duty.). The fiduciary relationship must arise from an express trust or a technical trust imposed before and without reference to the wrongdoing. *Cochrane*, 124 F.3d at 984 (quoting *Lewis v. Scott*, 97 F.3d 1182, 1185 (9th Cir.1996)).

■ Arvest argues that the mortgage document itself created an express trust. However, there is no language in the mortgage that specifically creates a trust and § 523(a)(4) does not reach constructive trusts. *Long*, 774 F.2d at 878. There is, however, an express trust recognized under Arkansas law and in accord with the terms of the mortgage.

According to the mortgage document, all miscellaneous proceeds were "assigned to and shall be paid to Lender [Arvest]." This comports with Arkansas law in that, "[a]ll bonds, bills, notes, agreements, and contracts in writing for the payment of money or property, or for both money and property, shall be assignable." Ark.Code Ann. § 4–58–102 (Repl.2001). The Arkansas statute continues:

(a) Every written assignment made in good faith, whether in the nature of a sale, pledge, or other transfer, or on account receivable or any moneys due or to become due on an open account or on a contract, except for wages and sala-

ries, all of which shall be hereinafter referred to as "account," with or without the giving of notice of the assignment to the debtor [builder], *shall be valid and complete at the time of the making of the assignment and shall be deemed to have been fully perfected at that time.*

(b)(1) After an assignment made in good faith is complete, no bona fide purchaser from the assignor, no creditor of the assignor, and no other assignee or transferee of the assignor in any event shall have or be deemed to have acquired any right or interest in the account so assigned or transferred or in the proceeds thereof or in any obligation substituted therefor, superior to the rights and interest therein of the assignee.

(2) In any case where, acting without knowledge of the assignment or transfer, the debtor [builder] in good faith pays all or part of such account to the assignor [Nail] or to the creditor, subsequent purchaser, or other assignee and transferee, all payments so made shall be acquittance to the debtor to the extent thereof, and the assignor [Nail] ... *shall be a trustee of any sums so paid* and shall be accountable and liable to the prior assignee thereof.

Ark.Code Ann. § 4–58–105 (Repl.2001) (emphasis added).

A trust relationship existed between the debtor and Arvest. As a result of that trust, the debtor was a trustee created by statute, and the Court finds that a fiduciary relationship existed between the debtor and Arvest. The Court must next determine whether there was fraud or defalcation by the debtor. As stated above, defalcation is the "misappropriation of funds held by a fiduciary and includes the innocent default of a fiduciary who fails to account fully for money received." *Herndon*, 277 B.R. at 768. The facts clearly support a misappropriation of funds.

Based on the debtor's testimony, the debtor did not turn the proceeds over to Arvest as required by the assignment; rather, she used the funds she received to pay for her attorney fees relating to the state court litigation, for remodeling and repair work on her new residence, and to pay off some credit card bills. Although the Court does not find any fraudulent intent in the use of the proceeds, the proceeds came into the debtor's hands as a result of a settlement relating to the condition of the property and, as such, are miscellaneous proceeds under the terms of the mortgage. Accordingly, the Court finds that the debtor committed defalcation while acting in a fiduciary capacity.

By separate order, and subject to the condition stated above relating to the real party in interest, the Court will enter a judgment against the debtor and in favor of Arvest/Fannie Mae for $65,000. However, the debtor is entitled to an allowance or set off for her expenses and costs related specifically to the state court lawsuit. It would not be equitable to require the debtor to turn over the entire amount of settlement based on Arvest's invitation for the debtor to bring suit against the builder. The debtor shall have 20 days from the date of this order to file an accounting of related expenses and costs; Arvest shall then have 10 days to object to any of the charges included in the accounting.

Arvest is ordered to provide a copy of this order to Fannie Mae in sufficient time to allow Fannie Mae to ratify, join, or be substituted in this adversary proceeding.

IT IS SO ORDERED.