In the Matter of the Application of JOHN POSS and Others, Petitioners, Respondents, for an Order Pursuant to Article 78 of the Civil Practice Act against PAUL J. KERN, President, and Others, Commissioners, Constituting the Municipal Civil Service Commission of the City of New York, and Others, Appellants, and OLIVER HUDSON and Others, Intervenors, Respondents.

First Department, February 13, 1942.

*David DuVivier* of counsel [*Paxton Blair* with him on the brief; *William C. Chanler, Corporation Counsel*], for the appellants.

*Menahem Stim* of counsel [*Blake, Stim & Curran*, attorneys], for the petitioners, respondents.

*James F. Sharkey* of counsel [*Arthur C. Goldberg* with him on the brief; *Roy P. Monahan*, attorney], for Stationary Engineer Eligibles as *amicus curiæ*.

COHN, J. In 1939 the municipal civil service commission advertised that it would hold an open competitive examination and a city-wide promotion examination for the position of stationary engineer. The published notices for these two examinations, in substance, stated the eligibility requirement of applicants to be five years' recent satisfactory experience in the operation of high pressure steam or high tension electric power plants. The notices also set forth that the duties of the position were to operate either steam or electric power plant equipment and that the technical tests to be given at a later date were to be concerned with the duties of the position.

On March 14, 1940, technical written tests were given for the two examinations. The same questions were given to the candidates who were taking the open competitive examination and to those who had applied for the city-wide promotion examination. These tests were divided into two parts, each having a weight of fifty per cent of the technical written examination. Part I consisted of questions which dealt with the steam specialty, whereas the questions in Part II were concerned only with the electric specialty. The instructions on the examination booklet stated that a rating of seventy-five per cent was required in Part I and in Part II of the technical written test, and that a mark of seventy-five per cent would be required for the entire examination. Thus it was made plain that each candidate was required to take and pass each part.

When the papers were rated it was ascertained by the examiners that only nine eligibles had successfully passed both parts of the examination. As the examiners found this number insufficient to meet the needs of the service, they recommended to the municipal civil service commission that separate lists be promulgated with the specific titles of stationary engineer (steam) and stationary engineer (electric), placing all those who qualified in the examination

relating to steam apparatus on the " steam " list and those who had qualified in the examination on the subject of electric power plants on the " electric " list.

Instead of following the plan indicated in the preliminary announcements of the examinations for two lists, that is, an open competitive list and a city-wide promotion list for stationary engineer, the commission, adopting the recommendation of its examiners, promulgated six separate lists as follows:

1. Promotion, stationary engineer (steam and electric), city-wide, which contained one name.

2. Promotion, stationary engineer (steam), city-wide, containing ten names.

3. Promotion, stationary engineer (electric), city-wide, containing eighteen names.

4. Open competitive, stationary engineer (steam and electric), containing two names.

5. Open competitive, stationary engineer (electric), containing fourteen names.

6. Open competitive, stationary engineer (steam), containing forty-six names.

Petitioners, nine in number, who are provisionals employed as stationary engineers in the department of public works, instituted this proceeding to invalidate these lists and the appointments therefrom, charging that the lists were illegally established. Each of the petitioners possessed the necessary eligibility for the open competitive examination. Four took the examination but failed to pass either part. The other five petitioners, who did not file applications, claimed they were prevented from competing by virtue of the announcement of the commission which they interpreted as requiring proficiency in both specialties, whereas they were skilled only in the electric specialty of stationary engineering and unversed in the steam specialty.

In opposing the petition, the president of the municipal civil service commission asserted that there was nothing in the notices of examination or their context which indicated that proficiency in both the steam and electric specialties would be required. The notices stated that the duties of the position were to operate either steam or electric power plant equipment and that the technical written tests were to be concerned with the duties of the position. We find that petitioners, who omitted to file applications for the examination, did not misinterpret the intent or language of the notices. The petitioners understood their context as intended and as construed by the commissioners themselves. Just what was contemplated is manifested (1) by the printed instructions in the

examination booklets which were to the effect that each candidate would be required to take and pass the examination in both the steam and the electric specialties, and (2) by the statement of the civil service commission to the effect that the commissioners had deviated from their original plan to declare eligible only those who had passed both parts of the examination after it had been discovered that but nine candidates succeeded in obtaining the required passing mark in both parts.

The suggestion that petitioners might have taken the examination and could thus have benefited in the same manner as those who had taken it and passed but one part, is without merit. These petitioners, being experienced in only one specialty, were led to believe that they could not successfully compete because, as the language of the notices indicated, the required tests would embrace both specialties. Hence they were warranted in making no attempt to compete. The five petitioners and perhaps many others similarly situated were thus deprived of an opportunity of taking part in an examination for the separate positions of stationary engineer (steam) and stationary engineer (electric). To this extent competition as required by the Constitution and the Civil Service Law of this State was frustrated. The eligible lists for stationary engineer (steam) and the eligible lists for stationary engineer (electric), namely, lists numbers 2, 3, 5 and 6, were accordingly illegally established and were properly canceled and appointments therefrom were properly annulled by the order of the Special Term.

Moreover, these four eligible lists are invalid for the further reason that they contain the names of candidates who had failed in one part of the technical examination. The municipal civil service commission was without authority to declare eligible those who did not receive a rating of seventy-five per cent or over in each part of the technical written test, for such action violated subdivision 3 of section V of rule V of the Rules of the Municipal Civil Service Commission, which reads as follows: " Unless otherwise specified, a candidate must receive not less than 50 percent in any required subject and a general average of not less than 70 percent to be eligible for certification and appointment, except that candidates for positions of a scientific, professional or technical character must obtain a rating of 75 percent in each technical subject."

It is well settled that the municipal civil service commission is bound by its own rules, which, under the statute, have the full force and effect of law. (Civ. Serv. Law, § 6, subd. 1; *Matter of Woods* v. *Finegan,* 246 App. Div. 271; *Matter of O'Brien* v. *Delaney,* 255 id. 385; affd., 280 N. Y. 697; *Matter of Wittekind,*

v. *Kern*, 170 Misc. 939; affd., 256 App. Div. 918; affd., 281 N. Y. 701.) As previously pointed out, candidates were required to take both Part I and Part II of the written examination. Each of these parts was completely technical. Each was so characterized in the examination booklets and the preliminary announcement referred to the examination as " technical." By passing candidates who received a grade of seventy-five per cent or over in only one part of the technical examination and who failed in the other, the commission disregarded its own rule which required that candidates for positions of a scientific or technical character must obtain a rating of seventy-five per cent in each technical subject.

The case of *Matter of Brady* v. *Finegan* (269 N. Y. 571), upon which appellants rely to justify their action, is clearly distinguishable. There the commission, after an examination for patrolman had been completed but before the identity of the candidates was made known, amended its own rule which required a minimum percentage of only twenty per cent on every part, by raising this minimum percentage to fifty per cent, and also secured the approval of the State Civil Service Commission for the modified rule. Thereafter, the municipal civil service commission announced that the rule, as amended, would be effective as to all candidates who had taken the examination. Such procedure was held proper. In this case no attempt was made by the commission to amend its own rule in the manner provided by statute. (Civ. Serv. Law, § 11, subd. 2.) The commission, as a matter of convenience, chose to ignore its own regulation in order to provide more candidates to meet the needs of the service. This it may not do. The rules of the municipal civil service commission, having the force and effect of law, must be respected to the same degree. (*People ex rel. Davie* v. *Lynch*, 164 App. Div. 517, 520.)

We think, however, that the Special Term erred in directing the cancellation of lists numbered 1 and 4. The eligibles on those two lists met all of the requirements of the examination as published. Each passed both parts of the technical examination as required by the preliminary announcements of the examination and received the rating commanded by the rules of the municipal civil service commission. The promulgation of the city-wide promotion list for stationary engineer (which contained but one name) was not, as the court ruled, contrary to law. It was not held in *Matter of Cornehl* v. *Kern* (260 App. Div. 35; affd., 285 N. Y. 777) that such a list is invalid *per se*. Illegality would only arise if promotions from a city-wide list were made from one department of the city to another department. Appellants assert that promotion appointments here were made in the department where the eligible was

employed. If a promotion appointment is limited to a vacancy in the department in which the eligible in question is employed, there can be no violation of section 16 of the Civil Service Law.

Appellants urge that petitioners have no right to institute this proceeding because they are provisionals. The fact that a petitioner happens to be a provisional appointee does not bar him from presenting to the courts his petition for the enforcement by officials of their mandatory duty. (*Matter of Andresen* v. *Rice,* 277 N. Y. 271, 281; *Matter of Kornbluth* v. *Rice,* 250 App. Div. 654, 656; affd., 275 N. Y. 597; *Matter of Baird* v. *Supervisors, etc.,* 138 id. 95, 115.) It is our view, however, that the Special Term was without authority to order the continuance in employment of the provisional incumbents and to enjoin appellants from dismissing them from their present positions. Temporary or provisional appointments to a competitive position cannot ripen into permanent appointments. (*Koso* v. *Greene,* 260 N. Y. 491, 495; *Matter of Rohl* v. *Jeacock,* 259 App. Div. 208; affd., 284 N. Y. 660; Civ. Serv. Law, §, 15.) Appointments of this character are usually permissible in cases of emergency when there is no appropriate eligible list available for the position. It may be that in the exercise of his discretion, the commissioner of public works might properly retain petitioners in their present positions pending the promulgation of appropriate eligible lists following the holding of the necessary examinations. However, the provision of the order which compels petitioners' retention in service is improper.

For the foregoing reasons, the order should be modified by eliminating therefrom the provision which enjoins appellants from dismissing petitioners from their present positions and by limiting the other provisions of the order relating to cancellation of eligible lists and appointments therefrom to lists numbers 2, 3, 5 and 6, and as so modified the order should be affirmed.

O'MALLEY and TOWNLEY, JJ., concur; MARTIN, P. J., and DORE, J., vote for modification to the following extent: By striking from the order appealed from the last paragraph which continues the *status quo* of the provisional incumbents and enjoins the civil service commission and others from dismissing them, and that in all other respects the order appealed from be affirmed.

Order modified by eliminating therefrom the provision which enjoins appellants from dismissing petitioners from their present positions and by limiting the other provisions of the order relating to cancellation of eligible lists and appointments therefrom to lists numbers 2, 3, 5 and 6, and as so modified affirmed. Settle order on notice.