RICHARD HARLAN MAHNERD AND OTHERS v.
WARD CANFIELD AND OTHERS.
ROLLO L. MUDGE AND OTHERS, INTERVENORS.

211 N. W. 2d 177.

August 10, 1973—Nos. 43183, 43195.

*Katz, Taube, Lange & Frommelt* and *Emanuel Z. Kopstein,* for appellant intervenors.

*Richard C. Smith,* for appellant relators.

*Keith M. Stidd,* City Attorney, and *Arvid M. Falk,* Assistant City Attorney, for respondents.

Heard before Knutson, C. J., and Rogosheske, MacLaughlin, and Schultz, JJ. Reconsidered on the record en banc.

HAROLD W. SCHULTZ, JUSTICE.*

These are consolidated appeals from an order of the district court. Upon a writ of certiorari, the district court reviewed a decision of the Minneapolis Civil Service Commission and ordered that an "eligible register" for the promotion of police officers based upon the written portion of a promotional examination be set aside and vacated. Further, the court ordered all permanent appointments except two based upon such examination set aside.

Intervenors, claiming their substantial rights had been affect-

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

ed by the decision of the lower court, appealed. They raise the following issues: (1) Whether the district court had jurisdiction to review the proceedings of the Minneapolis Civil Service Commission upon a writ of certiorari, and (2) whether the action of the court in vacating and setting aside the results of the examination was proper. Relators, whose standing on the promotion eligibility list had been affected by a regrading of the examination, also appealed.

In 1969, the Minneapolis Civil Service Commission administered a promotional examination for the rank of police captain. Applicants had to be permanently certified members of the Minneapolis Police Department holding the rank of lieutenant, detective, identification officer, or detective supervisor and having the requisite degree of experience. The written examination was weighed with an oral examination and a number of other factors, and an overall score of 70 percent was necessary to be qualified for the police captain eligibility list.

The test was administered on November 6, 1969. The examination consisted of 160 questions. Each applicant received an identification number to place on his test and also filled out an identification sheet bearing that number. These sheets remained in sealed envelopes until the examination was scored and the civil service staff was ready to send out the results. The examination answer sheets were scored by computer at the University of Minnesota. On the basis of a computer print-out, the questions were analyzed in regard to their difficulty and ambiguity. Ten questions were subsequently eliminated from the examination. The examinations were then scored on the basis of 150 questions and the identity of those passing the test was revealed.

The relators were among those who received a score of at least 70 percent based upon the 150-question written test. When the additional factors were weighed, relators received notice that they had passed the entire examination. After application of veterans' preference, relators were ranked 3, 4, and 5 on the eligibility list. The entire list consisted of 14 names. Based upon

the 160-question test, only 8 persons, including intervenors, qualified, and relators did not.

In January 1970, after reviewing their examinations, a number of candidates protested the deletion of the 10 questions. The protests were made pursuant to civil service rules. Mayor Charles Stenvig informed the commission shortly thereafter that it had made a commitment to the Police Federation in 1967 that no items in a written examination would be deleted after an examination had been given. No record of such a commitment was found. However, the minutes of a 1966 commission meeting did show that an earlier test had been rescored before the papers were identified. The commission resolved at that 1966 meeting that the examination be nullified and that "hereinafter, alterations in tests will be made only before tests are administered."

On the basis of this resolution, the civil service commission at its January 29, 1970, meeting rescinded the 150-item examination and reinstated the 10 deleted questions. The relators were given a hearing but failed to influence the commission. The 160-question examination was reinstated and relators received notification of their failure to pass.

Relators petitioned the district court for a writ of certiorari and a writ of mandamus. The writ of mandamus was quashed.[1] A return to the writ of certiorari was filed on behalf of respondent Minneapolis Civil Service Commission. The court concluded that the original deletion after the examination was without authority and beyond the sanction of the civil service rules. Further, the court found that the restoration of the 160-question test, after the disclosure of the examination results and the establishment of the eligibility list, was contrary to the civil service rules and to law. The court, therefore, ordered that the eligible register based on the results of the written examination be vacated and set aside and that all permanent appointments made from the register be set aside except those of two men who had

---

[1] The trial court determined that a writ of mandamus was not an appropriate writ.

ranked as No. 1 and No. 2 in the written examination, whether it was scored as a 160- or a 150-question test.

With respect to the first issue, we point out that the scope of the writ of certiorari is confined to review of proceedings that are judicial or quasi-judicial in character and is not available to review legislative or purely ministerial acts of administrative agencies or officers. State ex rel. Huntley School Dist. v. Schweickhard, 232 Minn. 342, 45 N. W. 2d 657 (1951). To render the proceedings of an administrative agency judicial in their nature, they must affect the legal or property rights of the citizen in a manner analogous to the courts acting judicially. State ex rel. Huntley School Dist. v. Schweickhard, *supra;* State ex rel. Board of County Commrs. v. Dunn, 86 Minn. 301, 90 N. W. 772 (1902).

As a general rule, the removal of a municipal employee by an administrative agency is an administrative function performed in a judicial manner. This court has held that the removal of an employee for cause upon hearing and notice is a quasi-judicial proceeding which may be reviewed upon certiorari. Sellin v. City of Duluth, 248 Minn. 333, 80 N. W. 2d 67 (1956); State ex rel. Hart v. Common Council, 53 Minn. 238, 55 N. W. 118 (1893). In State ex rel. Kruse v. Webster, 231 Minn. 309, 313, 43 N. W. 2d 116, 119 (1950), this court stated:

"We have often held that certiorari as used in this state is not the common-law writ, 'but rather a writ in the nature of certiorari.' It is employed strictly in the nature of a writ of error or an appeal. Its legitimate office is to review and correct decisions and final determinations of inferior tribunals. Its office is not to restrain or prohibit, but to annul. 1 Dunnell, Dig. & Supp. § 1391; State ex rel. Nordin v. Probate Court, 200 Minn. 167, 169, 273 N. W. 636, 637; Johnson v. City of Minneapolis, 209 Minn. 67, 295 N. W. 406; State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544."

The propriety of review by certiorari in cases similar to the case at hand, where the court reviewed the classification of civil serv-

ice employees, was upheld in State ex rel. Spurck v. Civil Service Board, 226 Minn. 240, 32 N. W. 2d 574 (1948); Id. 226 Minn. 253, 32 N. W. 2d 583 (1948); and State ex rel. Jenkins v. Ernest, 197 Minn. 599, 268 N. W. 208 (1936).

We conclude that the district court acted properly in granting review upon a writ of certiorari. The decision of the Minneapolis Civil Service Commission directly affected relators' eligibility classification.

We now come to the question of whether the district court acted properly in vacating and setting aside the results of the civil service examination. Minneapolis City Charter, c. 19, § 7, provides for rule-making power on the part of the civil service commission in regard to competitive examinations and eligibility lists. Minneapolis Civil Service Rules, Rule 2.06, provides for consideration of any protest made by any employee regarding the civil service laws and rules. Rule 5.15, entitled "Review of Examinations," provides in part:

"In the absence of proof of fraudulent acts, or of false statements by an applicant, no examination or papers connected therewith shall be subject to review, except as hereinafter provided, and provided that corrections may be made in case of clerical errors."

The section then goes on to provide for inspection of the examination by the competitor himself and appeal to the commission.

Here, the civil service commission attempted to adjust the test requirements without having notified the applicants in advance of the test that such an adjustment might be made. With this we do not agree, and an examination of the cases in other states reinforces our position.

In Poss v. Kern, 263 App. Div. 320, 32 N. Y. S. 2d 979 (1942), a preliminary announcement about the examination indicated that each applicant would be required to pass two tests. In addition, the civil service commission's rules required a passing grade on both tests. The court declared that the commission was without authority to declare subsequent to the test that a passing

grade on either test was sufficient. The court vacated the list and ordered a new examination.

In Hymes v. Schechter, 6 N. Y. 2d 352, 189 N. Y. S. 2d 870, 160 N. E. 2d 627 (1959), a new rule of the civil service commission provided for a "conversion formula" to be used on the test scores where there were insufficient candidates passing the examination. The rule, however, became effective 2 weeks after the examination was given. The court concluded the commission could not adjust the passing grade without having notified the applicants in advance of the examination that such an adjustment might be made.

One of the purposes of the civil service laws and rules as seen by this court is to eliminate as far as practicable the element of partisanship and personal favoritism in the making of an appointment. State ex rel. Kos v. Adamson, 226 Minn. 177, 32 N. W. 2d 281 (1948). Minneapolis Civil Service Rules, Rule 5.15, specifically limits the review of the commission's examinations.

Under the reasoning in Poss v. Kern, *supra,* and Hymes v. Schechter, *supra,* the civil service commission acted beyond its authority in deleting questions from the examination after it had been administered. Notice of possible adjustments should have been given in advance. In addition, Rule 5.15 specifically limits the commission's powers of review. Further, the commission's resolution of August 11, 1966, prohibited any alteration in examinations after they had been administered. Thus, the eligibility list based upon 150 questions was properly vacated.

The lower court found that the commission acted contrary to law in directing the regrading of the examination on the basis of 160 questions after the eligibility rankings had been established and the results were disclosed. With this we do not agree. After considering the deletion of the 10 questions following the original grading of the examination, the court stated:

"* * * While it may be perfectly proper to change an examination and to adjust grading before the examination is given, permitting such changes afterwards again could result in parti-

san manipulation and gross unfairness. * * * [T]he examination should have been graded exactly as given. That is what the Civil Service Rules contemplate, and in fairness to all that is what must be done."

We agree. There is no evidence or inference in the record to indicate that any partisanship, personal favoritism, or unfairness would result from the civil service commission's establishing an eligible list based on the original 160-question examination. Under the peculiar facts of this case we feel compelled to disagree with the trial court's remedy of nullifying the entire examination. The commission's reinstatement of the 160-question examination clearly adhered to the rules and policies of the commission. The trial court should have affirmed the action of the Minneapolis Civil Service Commission restoring the 10 questions removed by its staff and directing its staff to establish an eligible list by computing the written-test portion of the examination on the basis of the original 160 questions administered to the candidates.

Affirmed in part, reversed in part, and remanded for disposition in accordance with this opinion.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.