Robert LUND, petitioner, Appellant,

v.

**MINNESOTA STATE COLLEGES AND UNIVERSITIES, et al.,**
Respondents.

No. C2–00–165.

Court of Appeals of Minnesota.

Aug. 9, 2000.

Christina L. Clark, St. Paul (for appellant).

Mike Hatch, Attorney General, Tomas L. Stafford, Francis C. Ling, Assistant Attorneys General, St. Paul (for respondents).

Considered and decided by KLAPHAKE, Presiding Judge, SCHUMACHER, Judge, and PORITSKY, Judge.

## OPINION

BERTRAND PORITSKY, Judge.*

Appellant Robert Lund petitioned the district court for a writ of mandamus to compel respondents, the Board of Trustees for the Minnesota State Colleges and Universities and its chair, Michael Vekich (together, MnSCU), to issue him a teaching

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

appointment pursuant to Minn. Const. art. VI, § 10.

license or to hold a contested-case hearing on the licensure issue. The district court concluded that it lacked subject-matter jurisdiction to issue a writ of mandamus because Lund had other adequate legal remedies in the form of certiorari review of MnSCU's refusal to issue a license and a grievance proceeding under the collective bargaining agreement. Because we conclude that an adequate legal remedy was available to Lund in the form of certiorari review of the MnSCU decision, we affirm.

## FACTS

Lund was employed by the Minneapolis Community Technical College (MCTC). MCTC is a member of the MnSCU system. At some point in 1998, a position to teach a machine tool careers course became available. In November 1998(a) Lund had a license to teach, and was teaching, metal pattern and model making; (b) Lund applied to MnSCU, through MCTC, for a license to teach machine tool careers; (c) MCTC, on behalf of MnSCU, returned Lund's application because he was not teaching a machine tool careers course and had not received an offer to teach that course; (d) Lund informed MCTC that the class he was teaching was more advanced than the one for which he sought the license; (e) MCTC replied that the course Lund was teaching neither required him to have nor qualified him to have the license he sought; and (f) MCTC informed Lund that, due to lack of student enrollment in the modeling course, he would be laid off after spring 1999.

In December 1998, Lund sent the president of MCTC a letter attempting to exercise his seniority rights, claiming entitlement to teach a machine tools technology course. MCTC responded with a letter stating it had reviewed Lund's letter and the contract between MCTC and Lund's union, had consulted MnSCU, and was denying Lund's claims.

In January 1999, Lund, through his union, filed a grievance under the relevant collective bargaining agreement. During spring 1999, Lund, in what he claims was an attempt to mitigate his damages, applied as a member of the public—rather than an MCTC teacher—to teach the same course he had previously sought to teach by exercising his seniority rights. MCTC indicated Lund lacked the experience necessary to teach the class and declined to send his application to MnSCU.

In May 1999, Lund's attorney sent Lund's application directly to MnSCU in an attempt to get the relevant license and teaching position. In July, MnSCU responded with a letter stating (a) licenses are available only to persons teaching or with an offer to teach; (b) a person with a license can get an additional license only if the person is teaching or has an offer to teach in the additional field; (c) no administrator had signed Lund's application as was required to show that Lund had been offered or had secured a teaching position; (d) the relevant statute did not require that a license be granted in these circumstances; and (e) Lund's request for a license would not be granted. That day, Lund's attorney sent MnSCU a letter demanding a contested-case hearing on the licensure issue. A month later, Lund's attorney received a letter from an assistant attorney general, stating that the attorney general's office now represented MnSCU and that Lund was not entitled to a contested-case hearing.

In December 1999, Lund petitioned the district court for a writ of mandamus to compel MnSCU either to issue the requested license or to hold a contested-case hearing on the licensure question. After a hearing, the district court issued an order dismissing Lund's petition for lack of jurisdiction because Lund had adequate non-mandamus remedies, including the still-pending grievance proceeding and the opportunity to seek certiorari review of MnSCU's July 1999 denial of the license request. Lund sought reconsideration of this ruling, his request was denied, and he appealed.

## ISSUE

Did the district court err by dismissing Lund's petition for a writ of mandamus?

## ANALYSIS

■ The district court lacks jurisdiction to issue a writ of mandamus if an adequate legal remedy exists. *See* Minn.Stat. § 586.02 (1998) (stating mandamus "shall not issue in any case where there is a plain, speedy, and adequate remedy in the ordinary course of law"); *McIntosh v. Davis*, 441 N.W.2d 115, 118 (Minn.1989) (stating mandamus is an extraordinary remedy available to compel or restrain action by a judicial or quasi-judicial body, particularly where there exists no adequate remedy at law (citing authorities)); *Silver Bay Area Citizens for Quality Educ. v. Lake Superior Sch. Dist. No. 381*, 448 N.W.2d 92, 95–96 (Minn.App.1989) (stating district court "lacked jurisdiction to issue a writ of mandamus" because, in that case, certiorari was an adequate remedy), *review denied* (Minn. Jan. 23, 1990). Here, the district court ruled that it lacked jurisdiction to issue a writ of mandamus because Lund had adequate legal remedies: (a) certiorari review of MnSCU's July 1999 denial of his license request, and (b) his grievance proceeding.

■ For an administrative agency's decision to be reviewable by certiorari, it must be quasi-judicial in nature. *See Western Area Bus. & Civic Club v. Duluth Sch. Bd. Indep. Dist. No. 709*, 324 N.W.2d 361, 364 (Minn.1982) (stating certiorari lies to review administrative agency's quasi-judicial decisions but not its legislative or administrative decisions); *Mahnerd v. Canfield*, 297 Minn. 148, 152, 211 N.W.2d 177, 179 (1973) (stating certiorari does not lie to review legislative or ministerial acts of administrative agencies). Here, the parties disagree about whether MnSCU's July 1999 decision to deny Lund's request for the license was a quasi-judicial decision and hence whether Lund could seek certiorari review of that decision.

■ The supreme court has stated:
[T]he three indicia of quasi-judicial actions can be summarized as follows: (1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim.
*Minnesota Ctr. for Envtl. Advocacy v. Metropolitan Council*, 587 N.W.2d 838, 842 (Minn.1999) (citing *Meath v. Harmful Substance Compensation Bd.*, 550 N.W.2d 275, 279, 280 (Minn.1996) and *Meath*, 550 N.W.2d at 280 (P. Anderson, J., concurring)). Lund alleges the second element of the test for quasi-judicial conduct was not met in this case because MnSCU's denial was not based on a prescribed standard but on an "unwritten, unpromulgated, non-existent policy" of granting licenses only to persons who were teaching or had an offer to teach. We reject that assertion.

■ Under Minn.Stat. § 136F.49 (1998), MnSCU "shall adopt policies for licensure of *teaching personnel in technical colleges.*" (Emphasis added.) The statute limits MnSCU's licensing authority to "teaching personnel." MnSCU reads "teaching personnel" literally to refer to persons who are actually teaching or who (because they have an offer to teach) will be teaching. Thus, MnSCU reads the statute as making a teaching position a threshold for the issuance of a license.

The policy of MnSCU's board of trustees and its licensing handbook are consistent with MnSCU's reading of the statute. The portion of the policy of MnSCU's board of trustees addressing licensing of faculty states:
**Authority to Identify, Establish, and Modify Licensure Fields and *Minimum Qualifications***
* * *
**Subpart B.** The system administration shall establish minimum educational and

*occupational qualifications necessary to be granted specified licenses.*

(Emphasis added.) Apparently expanding on this statement, MnSCU's licensing handbook states:

> This office is authorized to license only those who are either currently employed or who have been offered employment by either a MnSCU campus or a private vocational setting in a position that requires licensure. Therefore, this office does not have authority to issue licenses to the general public.

■ These statements by MnSCU articulate and explain its refusal to license persons who do not have either a teaching position or an offer to teach. This refusal flows logically from MnSCU's reading of Minn.Stat. § 139F.49 as limiting its licensing authority to "teaching personnel." While other readings of that statute may be possible, we accord considerable weight to MnSCU's reading of the statute. *See Mammenga v. Department of Human Servs.*, 442 N.W.2d 786, 792 (Minn.1989) (stating courts are not bound by agency's interpretation of its governing statute but that if meaning of statute is doubtful, "courts should give great weight to a construction placed upon [the statute] by the Department charged with its administration") (quoting *Krumm v. R.A. Nadeau Co.*, 276 N.W.2d 641, 644 (Minn.1979)).

Moreover, the question here is not whether MnSCU correctly reads the statute, but whether there is a prescribed standard for making licensure decisions. MnSCU has a viable reading of the statute and that reading identifies a standard threshold that is articulated in MnSCU's licensing handbook. Indeed, we note that in addition to satisfying the threshold requirement of having a teaching position or an offer to teach, obtaining a license requires satisfaction of other criteria that vary depending on the license sought and the circumstances under which that license is sought. *See* MnSCU Board of Trustees–Policy § 3.9, part 5, subpart A (identifying Minn. R. 3515.0100–3515.9942 (except 3515.4400) & chapter 3700 (except 3700.0145 and 3700.1405) (1993 & Supp. 1994) as rules applicable to licensing decisions); Minn. R. 3515.0100–3515.9942 (except 3515.4400) & chapter 3700 (except 3700.0145 and 3700.1405) (1993 & Supp. 1994) (listing requirements and substitute requirements for obtaining license). Because the identification of the relevant circumstances and requirements under the rules requires MnSCU at least potentially to exercise some discretion, we must also reject Lund's assertion that MnSCU's teaching decisions are purely administrative or ministerial.

Because only the existence of the second (prescribed-standard) element of a quasi-judicial decision is contested here and because MnSCU's licensing decisions involve a prescribed standard, we conclude that MnSCU's decision to deny Lund a license was a quasi-judicial decision. Therefore, certiorari was available to review that decision and Lund had an adequate remedy at law. As a result, the district court lacked jurisdiction to issue a writ of mandamus. Because this analysis resolves the appeal, we need not address whether Lund's grievance was an adequate remedy.

## DECISION

Because MnSCU's July 1999 decision refusing to grant Lund a license was a quasi-judicial decision, certiorari was available to review that decision and the district court lacked jurisdiction to issue a writ of mandamus.

**Affirmed.**