**In the Matter of the APPEAL OF the SELECTION PROCESS FOR THE POSITION OF ELECTRICIAN (Exam # 000200).**

No. A03–785.

Court of Appeals of Minnesota.

Feb. 3, 2004.

V. John Ella, Mansfield, Tanick & Cohen, P.A., Minneapolis, MN, for relator Keith M. Anderson.

Jay M. Heffern, Minneapolis City Attorney, Caroline M. Bachun, Assistant City Attorney, Minneapolis, MN, for respondent Minneapolis Civil Service Commission.

Considered and decided by WILLIS, Presiding Judge; KLAPHAKE, Judge; and ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

In 2002, relator, Keith Anderson, a temporary electrician for the City of Minneapolis, complained of alleged safety violations involving city vehicles. Shortly afterward, relator was terminated from his employment. After the termination, relator complained to the Minnesota Occupational, Safety, and Health Agency (MOSHA). Eight months after relator's employment was terminated, the city accepted applications for permanent electricians; one of the highlighted requirements was completion of a state-approved apprenticeship. Relator had completed a state-approved apprenticeship but was unsuccessful in applying for the position; one of the successful applicants had not completed a state-approved apprenticeship. Relator challenged the application procedure in proceedings before respondent, the Minneapolis Civil Service Commission, alleging that he was not hired as retaliation for his MOSHA complaint and that there were irregularities in the hiring process, including the waiver of the apprenticeship requirement. Respondent did not conduct an evidentiary hearing and concluded that either there were no irregularities or that any irregularities were irrelevant. We reverse.

## FACTS

From January 1998 until February 2002, relator was employed by the City of Minneapolis (the city) as a temporary (i.e., non-civil-service) electrician. In January 2002, relator complained to his supervisors, including his general foreman, Tom Piersak, that the city truck provided to him was unsafe. Approximately one week after his complaint, relator's employment with the city was terminated. Relator claims that this was in retaliation for his complaint, although the official reason given was that he was released as part of a workforce reduction. Relator filed a complaint with MOSHA and his union, alleging retaliatory discharge because of his complaint.

From October 16, 2002, through November 1, 2002, the city accepted applications for electricians in the public works transportation department, the same department in which relator had served as a temporary employee. Relator submitted an application. The posting stated only one educational requirement: that the applicant must have completed "an apprenticeship program approved by the State Division of Apprenticeship," and the posting also required submission of proof of successful completion of the apprenticeship. The proof-of-completion requirement was underlined and starred. The posting also stated the applicant needed to possess, and submit proof of, a Class A Journeyman Electrician's License. The requirement of proof of licensure had two stars and was underlined.

Respondent's staff ranked relator twelfth out of twenty candidates. The top four candidates were interviewed. But one of those candidates—one of two ultimately employed—had not submitted proof of completion of an apprenticeship. Of the candidates ranked fifth through eleventh, only numbers five, seven, and nine had submitted proof of completion of a state-approved apprenticeship. Relator had submitted proof of completion a state-approved apprenticeship.

Relator also challenged the interview process, alleging that (1) one of the successful candidates did not meet the minimum requirements; (2) Tom Piersak, one of those conducting the interviews, had called one of the successful candidates and told him what to say at the interview; and (3) relator had been denied the job because

of his safety complaint while a temporary worker. Relator submitted affidavits and notarized letters to respondent supporting his claims. The human resources department investigated and submitted a report stating: (1) Piersak called all the interviewees but only arranged meeting times with them; (2) work experience could substitute for the apprenticeship requirement, conceding that one of the interviewees had not completed an approved apprenticeship; and (3) relator's application was fairly reviewed, and no one who evaluated his application had knowledge of his MOSHA complaint.

Respondent conducted two hearings on relator's challenges but refused to conduct an evidentiary hearing. At the first hearing, respondent requested that relator submit an affidavit and that the human resources department submit "some written materials in response." At the second hearing, respondent heard arguments and considered the previously requested written material but did not hear testimony or receive additional evidence.

Without any further hearings, respondent concluded that (1) alternative methods to fulfill the educational requirement should have been stated, but this failure did not prejudice relator, (2) respondent did not have jurisdiction to "review the process used by the [public works transportation] department in its internal interviews," and (3) no one reviewing relator's application knew of the MOSHA complaint, and the grading of the applications was fair. Relator, by writ of certiorari, now challenges these conclusions.

### ISSUES

I. Does relator have standing?

II. Did the Minneapolis Civil Service Commission err in finding it did not have jurisdiction to review the interview process used following certification of a list of interviewees?

III. Is the Minneapolis Civil Service Commission's finding that no one grading relator's application knew of his MOSHA complaint and that his application was graded fairly and objectively based on substantial evidence?

IV. Did the Minneapolis Civil Service Commission err in deciding it was irrelevant that the human resources department did not follow the stated educational requirement?

V. What is the appropriate remedy for the alleged irregularities?

### ANALYSIS

"There is a presumption of administrative regularity, and the party claiming otherwise has the burden of proving a decision was reached improperly." *Buchwald v. Univ. of Minn.*, 573 N.W.2d 723, 727 (Minn.App.1998), *review denied* (Minn. Apr. 14, 1998).

#### I. Standing

Respondent raises, as a threshold matter, the issue of relator's standing to challenge either the deviation from the apprenticeship requirement or the alleged procedural irregularities in the employment procedure because relator was ranked twelfth and only the top four candidates received interviews. Standing is a matter of law, which we review de novo. *Schiff v. Griffin*, 639 N.W.2d 56, 59 (Minn. App.2002). In deciding standing, the court is to look at the complaining party, not the proposed issues. *Id.* "Essentially, a potential litigant must allege injury in fact, or otherwise have a sufficient stake in the outcome, to have a court decide the merits of a dispute." *Cochrane v. Tudor Oaks*

*Condo. Project,* 529 N.W.2d 429, 433 (Minn.App.1995), *review denied* (Minn. May 31, 1995).

Standing is a low hurdle because relator need only allege injury in fact. *See id.* Here, relator has alleged injury in that he was a highly qualified candidate who should not have received a low civil service ranking and therefore should have received an interview and a chance at the job. Further, relator argues persuasively that, regardless of his rank relative to the other candidates, the interview process was sufficiently defective such that he could not reasonably be eliminated as a candidate for employment. Relator has alleged injury in fact and has standing. *See id.*

## II. Respondent's Jurisdiction

■ Respondent contends that it lacks jurisdiction to review the interview process but does not explain why jurisdiction is absent. Respondent asserts that, once a list of interviewees is compiled and is sent to the hiring department for interviews, the matter is removed from respondent's jurisdiction. But relator argues that respondent has broad jurisdiction to investigate all aspects of the hiring process and notes that respondent has cited no authority supporting a jurisdictional limit.

■ Jurisdiction is a question of law and is reviewed de novo. *Shaw v. Bd. of Regents,* 594 N.W.2d 187, 190 (Minn.App. 1999), *review denied* (Minn. July 28, 1999). The supreme court has said:

A commission can exercise only such authority as is legally conferred by express provisions of law or such as, by fair implication and intendment, is incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the objectives for which the commission was created. Any reasonable doubt as to the existence of any particular power in the commission should be resolved against the exercise of such authority.

*Essling v. St. Louis County Civil Serv. Comm'n,* 283 Minn. 425, 428, 168 N.W.2d 663, 665 (1969).

The jurisdiction of respondent is not clearly delineated.[1] Relator claims, and

---

1. The Minneapolis City Charter states, "The commission shall from time to time investigate the enforcement of this act and of the rules made under it; the action of all examiners; the duties of all departments and of all employees of the city; the efficiency of the service, and such other matters as come within the scope of this Chapter." Minneapolis, Minn., City Charter Ch. 19, § 19 (2002). The purpose of the civil service commission "is to ensure a fair and effective system of personnel administration, which is based upon the following merit principles: ... E. Recruiting, selecting, and advancing employees on the basis of their relative abilities, knowledge, and skills, including fair consideration of qualified applicants for initial appointment." Minneapolis R. Civ. Serv. Comm'n 1.01.

Respondent relies on a section of the city charter that provides for "[t]he creation of lists of eligible candidates after successful examination, in the order of their standing in the examination." Minneapolis, Minn., City

Charter Ch. 19, § 7(d) (2002). The rule concerning the list of interviewees provides, "[T]he Human Resources Department will send the requisitioning department (certify) the names of eligible candidates when there is a vacancy. Eligible candidates not hired will be returned to the list in their proper order." Minneapolis R. Civ. Serv. Comm'n 8.03.

The civil service commission rules also provide for appeals of hiring decisions, in which case "[t]he Human Resources Director and his or her staff is authorized to receive and consider appeals relating to the administration of the Civil Service Chapter of the City Charter and these Rules. The Civil Service Commission has the final authority to determine whether or not the Human Resources Department's decision meets with the intent of the Rules and/or established policy and precedent." Minneapolis R. Civ. Serv. Comm'n 2.04. That rule continues, "The Human Resources Department will investigate appeals based on the intent of Civil Services

respondent does not contest, that there are no appellate decisions holding that civil-service commissions lack jurisdiction to consider the fairness of the application procedure for civil-service positions. For example, in *Amundsen v. City of Minneapolis*, the fairness of an interview was questioned, but the civil service commission's jurisdiction to review the interview process was not challenged. 300 Minn. 520, 521, 218 N.W.2d 690, 691 (1974).

We conclude that respondent has jurisdiction. The city charter in chapter 19, section 19, directs respondent to investigate issues arising under chapter 19, and section 13 of chapter 19 states, "All examinations shall be impartial, fair and practical and designed only to test the relative qualifications and fitness of applicants to discharge the duties of the particular employment." Minneapolis, Minn., City Charter Ch. 19, § 13 (2002). The rules state, "Examinations may consist of one or more of the following components: written test, oral interview, rating of education, skills, and/or experience, practical/work sample, physical performance, or seniority. The number of candidates advancing to successive components in the examination may be restricted to the most highly qualified person." Minneapolis R. Civ. Serv. Comm'n 6.06. Thus, respondent has jurisdiction to consider the fairness and impartiality of the application process.

The human resources department, which reports to respondent, is required to investigate all appeals based on the intent of the commission's rules, which are in place for the purpose of efficient and fair hiring practices. Minneapolis R. Civ. Serv. Comm'n 2.04(B); rule 1.01. Appeals are allowed that relate to any part of an application, including oral interviews. Minneapolis R. Civ. Serv. Comm'n 2.04(D)(2).

Further, rule 2.04(E) orders respondent to preserve the intent of the rules and chapter 19 of the charter. Because the intent of chapter 19 and the rules is to promote a fair system of hiring based on merit, the commission is not only authorized but required to take action to preserve the fairness of the hiring system. Therefore, the commission has jurisdiction to ensure that the hiring process is fair, which is the ultimate issue in dispute here.

We are mindful of the caution in *Essling* that reasonable doubts as to the question of jurisdiction should be resolved in favor of finding a lack of jurisdiction. 283 Minn. at 428, 168 N.W.2d at 665. But because respondent's jurisdiction extends to the fair implications of chapter 19 necessary to effectuate the commission's purpose of ensuring fair hiring systems based on merit, relator's challenge to the interview process is certainly within the ambit of chapter 19 of respondent's rules. *See id.; see also* Minneapolis R. Civ. Serv. Comm'n 2.04. We conclude that respondent has jurisdiction to review relator's challenge to the interview process.

### III. Respondent's finding on the grading of the application

Respondent found, after examining all of the applications, and argues here that relator's application was fairly and objectively graded; respondent also concluded and ar-

Rules, policies, and precedents and make a determination. If it is later determined that not all facts or points of view were considered, or for other good and sufficient reasons, the Commission may reconsider the staff determination in such appeals." Minneapolis R. Civ. Serv. Comm'n 2.04(B). The rule further allows for "[a]ppeals related to any part

(written, oral, practical, T[raining] & E[xperience], etc.) of an examination." Minneapolis R. Civ. Serv. Comm'n 2.04(D)(2). Lastly, rule 2.04 mandates, "The Commission will take remedial action necessary to preserve the intent of the Charter and these Rules." Minneapolis R. Civ. Serv. Comm'n 2.04(E).

gues here that there was no evidence that anyone in the human resources department had knowledge of relator's MOSHA complaint because the staff report says as much. Relator counters that the staff report is not sufficient, standing alone, to justify this finding.

■ Findings of administrative agencies will be upheld if there is substantial evidence for the decision. *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977). "Substantial evidence" is defined as

1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than "some evidence"; 4) more than "any evidence"; and 5) evidence considered in its entirety. There are correlative rules or principles that must be recognized by a reviewing court, such as: 1) unless manifestly unjust, inferences must be accepted even though it may appear that contrary inferences would be better supported; 2) a substantial judicial deference to the fact-finding processes of the administrative agency; and 3) the burden is upon the appellant to establish that the findings of the agency are not supported by the evidence in the record, considered in its entirety.

*Id.* The agency's conclusions will be upheld unless they "are arbitrary or capricious." *Id.* at 827.

### a. the grading

In *Amundsen,* the supreme court upheld the Minneapolis Civil Service Commission's decision where the commission adopted a staff report, based on a review of recordings of the interviews at issue, that concluded (1) the interviews were fair to all, (2) all applicants were asked the same questions, (3) all applicants were given the same amount of time to respond, and (4) all of the questions were valid and appropriate. 300 Minn. at 521, 218 N.W.2d at 691.

■ Here, the staff report, in discussing this issue, states in its entirety:

The Human Resources staff [that] completed the evaluation of the applications and subsequently certified out a list of candidates to the Public Works department did not have any knowledge of the listed incident or lawsuit at the time of the scoring. Since the initial hearing on this matter three weeks ago, I [the author of the report] have personally reviewed the *T & E* documents and the submitted applications, and I [the author of the report] affirm that the rating of the applications was performed in a manner consistent with good human resources practices and procedures, and that the established ranking fairly and accurately identifies, in order, the applicants most qualified for the position, based upon their submissions.

Another staff report, prepared earlier, states that relator's application was fairly scored and the reason for his low score was that he put too little information into the section of the application on specific job duties.

In describing on the application form his previous employment with respondent, relator stated, "I had worked under every foreman and had been trained to perform all the jobs at traffic. I did not work on navigation lighting or get the opportunity to build an EPAC Traffic Controller." Relator briefly described his other work experiences as an electrician. The highest-ranked candidate had only one job as an electrician and that was also with respondent. That candidate described his experience, "Assemble, install, repair and maintain all traffic and street lighting throughout the City of Minneapolis."

The staff reports relied on by respondent are entirely conclusory and insufficient to support the commission's decision. Unlike *Amundsen,* where the staff report included documented facts, including that interviewers consistently asked the same questions and gave each applicant the same amount of time, the staff reports here merely concluded the grading was fair without providing any basis for the conclusion. If the earlier report is correct that the most important section of the written application was the four lines describing previous employment, it is unclear why there is a significant disparity between the points awarded to the top applicant and the points awarded to relator, given that both applications contain roughly the same level of minimal detail. Moreover, while the application instructed relator to include supplementary materials, the earlier staff report states that respondent may ignore these supplementary materials in grading the application. Thus, there is not substantial evidence that the grading was fair.

### b.  MOSHA complaint

■ The commission's finding of lack of knowledge of relator's MOSHA complaint also lacks substantial evidence. The staff report concluded that no one who evaluated the applications knew of the complaint without giving any explanation for that finding, and the commission adopted this conclusion. Relator alleged that the city attorney had specifically advised MOSHA that relator's complaint had been forwarded to human resources. Relator also argued that, because Piersak was aware of the complaint and was heavily involved with the process, human resources may have learned of the complaint from Piersak. Relator argues that he should have been afforded the opportunity to develop these facts before respondent issued its decision.

It is uncontested that the city attorney told MOSHA that the complaint had been forwarded to the human resources department. Thus, there is not substantial evidence supporting the finding of lack of knowledge of relator's safety complaint.

### IV.  Deviation from the posted requirements

■ Respondent concluded that, although it was error not to advise applicants of alternative methods of complying with the apprenticeship requirement, relator was not adversely affected by this error.

■ Whether the deviation from the job posting is permissible is a question of law and is reviewed de novo. *See Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989) (stating that the application of the law to uncontested facts is a matter for de novo review). Rule 6.03 states that the human resources department recommends job requirements including "educational achievements, licenses and certificates, medical and physical standards, and work experience" for open positions; the human resources department may also demand proof of those requirements. Minneapolis R. Civ. Serv. Comm'n 6.03. Applications are to be reviewed fairly and objectively. Minneapolis R. Civ. Serv. Comm'n 6.04. Rule 6.04 further provides that "[s]pecific test items may be deleted or more than one correct answer approved when, in the judgment of subject matter experts ... such changes in the scoring are appropriate." Minneapolis R. Civ. Serv. Comm'n 6.04(D). Rule 6.12 states that "the Human Resources Department may refuse to examine, refuse to certify, or remove from a list" candidates who do not meet the minimum stated qualifications so long as that is "[c]onsistent with law, merit principles, and efficiency." Minneapolis R. Civ. Serv. Comm'n 6.12.

In *Mahnerd v. Canfield*, a 160–question test was given to applicants seeking a promotion. 297 Minn. 148, 150, 211 N.W.2d 177, 178–79 (1973). After the test was given, ten questions were eliminated because they were either too difficult or were ambiguous. *Id.* at 150, 211 N.W.2d at 179. The supreme court concluded that the elimination of ten questions was impermissible and stated, "Here, the civil service commission attempted to adjust the test requirements without having notified the applicants in advance of the test that such an adjustment might be made. With this we do not agree." *Id.* at 153, 211 N.W.2d at 180. The supreme court ruled that, prior to the test, the commission was required to give notice that it may adjust the test after it was taken in order to be able to make any adjustments, otherwise, "partisanship and personal favoritism" could creep into the process. *Id.* at 154, 211 N.W.2d at 181.

Relator argues that changing the job requirements after the job has been posted, applications received, and the deadline for applications has passed, is no different from changing a test after administration. We agree. It is important to note here that we are not faced with interpreting a requirement for employment or a requirement of minimal significance. Respondent clearly described and emphasized a training and educational requirement and then inexplicably abandoned it.

It was error for respondent to deviate from the posted requirements for the position without giving notice that it might do so.

### V. Remedy

 Relator seeks to have this court reverse respondent's ruling and reopen the application process or, at a minimum, remand to respondent for an evidentiary hearing. In *State ex rel. Kos v. Adamson*, the supreme court affirmed the district court's reversal of the certification of an applicant when the application process consisted solely of oral interviews that were subjective in part, consisted of different questions for different candidates, and had no definite criteria for the grading. 226 Minn. 177, 185–86, 32 N.W.2d 281, 285–86 (1948). In *Mahnerd*, the supreme court concluded that reopening the application process was unnecessary because it was possible for the commission to use already acquired data to rank the list of eligible candidates. 297 Minn. at 155, 211 N.W.2d at 181. But unlike *Mahnerd*, there is no untainted, already acquired data available here because the application process was flawed from its very inception. The logic set forth in *Adamson* applies here, and respondent's decision must be reversed. We take no position on the ultimate outcome of the reopened civil service process. Further, because the application process must be reopened, it is unnecessary to address relator's demand for an evidentiary hearing, and we decline to do so.

### DECISION

We conclude that respondent's decision lacks a substantial evidentiary basis. Further, material written job requirements were modified without notice to candidates for employment after the applications were received. We reverse and remand this matter with instructions to reopen the application process and conduct the hiring process in accordance with appropriate civil service procedures to fill the position of permanent electrician.

**Reversed and remanded.**