*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1151**

Greg Peterson, et al.,
Relators,

vs.

City of Richfield,
Respondent,

Richfield Police & Fire Civil Service Commission,
Respondent.

**Filed March 28, 2016
Affirmed
Schellhas, Judge**

Richfield Police & Fire Civil Service Commission

Gregg M. Corwin, Grant S. Gibeau, Gregg M. Corwin & Associate Law Office, P.C., St. Louis Park, Minnesota (for relators)

Julie Fleming-Wolfe, St. Paul, Minnesota (for respondents)

Considered and decided by Schellhas, Presiding Judge; Johnson, Judge; and Smith, John, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Relators challenge respondent-commission's ratification of a detective-promotion eligible register, arguing that the commission failed to consider records of the candidates' efficiency, character, conduct, and seniority as required by Minn. Stat. § 419.06(9) (2014), and violated its civil-service rules. We affirm.

**FACTS**

In 2013, the Richfield Police Department initiated a promotional process to fill an open detective position. In July 2013, respondent Richfield Police and Fire Civil Service Commission unanimously approved a promotional process that consisted of a written test, comprising 40% of each candidate's total score, and an oral interview, comprising 60% of each candidate's total score. Five officers applied for the position. After the written and oral examinations were conducted and scored, the commission approved an eligible register listing the candidates in order of their total scores and promoted the candidate with the highest score. Relators Souphanny Dean and Greg Peterson ranked third and fourth, respectively, on the eligible register.

Peterson filed a petition for writ of certiorari with this court, arguing that the commission failed to review "records of efficiency, character, conduct and seniority" as required by Minn. Stat. § 419.06(9). We concluded that the promotional process satisfied the requirements of section 419.06(9). *Peterson v. Richfield Civil Serv. Comm'n*, No. A13-2337, 2014 WL 3801391, at *4 (Minn. App. Aug. 4, 2014). On June 10, 2015, the supreme court reversed, concluding that "the Commission violated Minn. Stat. § 419.06(9) when it

failed to consider records kept in the regular course of the administration of civil service as required by statute." *Peterson v. Richfield Civil Serv. Comm'n*, 864 N.W.2d 340, 342 (Minn. 2015) (quotation and citation omitted). The supreme court remanded to the commission "for further proceedings consistent with this opinion." *Id.*

On June 15, 2015, the commission held a "closed executive session" to discuss the "pending litigation" on remand. On June 16, the members of the original interview panel "individually reviewed each of the candidate's personnel files as they were at the time of the original promotional process in October 2013." The panel agreed that "the [candidates'] files reflected solid careers with the Richfield Police Department" and that "nothing in any of the files warranted movement on the list of any of the candidates one way or another." The commission's president attended but did not participate in the June 16 review meeting.

At an open commission meeting on June 23, 2015, Dean stated that she and Peterson "believe[d] the Commission [wa]s violating . . . the Civil Service Rules based on how the review was conducted." The commission's president stated that the review was "unbiased" and "carefully done for each file" and that "[t]here was no mitigating information to change the order of the register." The commission approved and ratified the eligible register without changing the original rankings.

This certiorari appeal follows.[1]

---

[1] Dean and Peterson were also parties to a recent appeal in which we reversed and remanded the summary-judgment dismissal of their claims against respondent City of Richfield for age discrimination in the 2013 promotional process and Peterson's claim against the city for retaliation after he prevailed in a previous age-discrimination suit against the city. *Peterson v. City of Richfield*, No. A15-0925 (Minn. App. Mar. 21, 2016).

**D E C I S I O N**

A police civil service commission's promotional decision may be reviewed by a writ of certiorari. *See County of Washington v. City of Oak Park Heights*, 818 N.W.2d 533, 539 (Minn. 2012) ("[T]he quasi-judicial decisions of a municipality are reviewable only by certiorari."); *Bahr v. City of Litchfield*, 420 N.W.2d 604, 605–06 (Minn. 1988) (stating that writ of certiorari was "proper vehicle" for obtaining judicial review of police commission's promotional decision). Certiorari review is limited to "questions affecting the jurisdiction of the [commission], the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn. 1992) (quotation omitted).

> If a police commission has made a discretionary decision to appoint an officer to fill a vacancy, and if that decision has been made pursuant to [Minn. Stat. § 419.06(9) and local rules], a police commission's decision will not be disturbed by an appellate court absent proof of fraudulent, arbitrary, or unreasonable actions by the commission.

*Anderson v. Police Civil Serv. Comm'n*, 414 N.W.2d 389, 391 (Minn. 1987).

*Records of efficiency, character, conduct, and seniority*

A police civil service commission must adopt rules that provide for "promotion based on competitive examination and upon records of efficiency, character, conduct and seniority." Minn. Stat. § 419.06(9). Dean and Peterson argue that the commission "failed to follow Minnesota Statute section 419.06(9) when [it] recertified the 2013 Register"

4

because the commission performed only a "cursory review of the candidate's records that carried no weight and had no ability to affect the candidates' rankings on the 2013 Register."

Dean and Peterson's argument lacks merit. The supreme court remanded the original petition to the commission "for further proceedings consistent with this opinion"— that is, "to consider records 'kept in the regular course of the administration of civil service' as required by [section 419.06(9)]." *Peterson*, 864 N.W.2d at 342 (quoting *State ex rel. Kos v. Adamson*, 226 Minn. 177, 184, 32 N.W.2d 281, 285 (1948)) (citation omitted). Neither the supreme court's decision nor section 419.06(9) required the commission to assign a numerical value to consideration of the candidates' records. Minn. Stat. § 419.06(9); *Peterson*, 864 N.W.2d at 340, 342. And the record contains no evidence that the commission failed to consider the candidates' records of efficiency, character, conduct, and seniority before it approved and ratified the eligible register on remand.

The notes from the original interview panel's June 16, 2015 meeting reflect that the members of the panel met for about two hours and "individually reviewed each of the candidate's personnel files as they were at the time of the original promotional process in October 2013." The panel "discussed the content of the files to determine if anything in the files affected the ranking of the candidates" and agreed that "nothing in any of the files warranted movement on the list of any of the candidates one way or another." At the commission's June 23, 2015 meeting, the commission's president stated that the review was "unbiased" and "carefully done for each file" and that "[t]here was no mitigating information to change the order of the register." Based on the review, the commission

approved and ratified the eligible register without changing the candidates' rankings. We conclude that the commission complied with the supreme court's direction "to consider records 'kept in the regular course of the administration of civil service' as required by [section 419.06(9)]." *Peterson*, 864 N.W.2d at 342 (quoting *Kos*, 226 Minn. at 184, 32 N.W.2d at 285) (citation omitted).

*Commission rules*

Dean and Peterson alternatively argue that the commission violated the Richfield Police and Fire Civil Service Commission Rules and Regulations (commission rules) if it considered the candidates' records of efficiency, character, conduct, and seniority on remand. "One of the purposes of the civil service laws and rules as seen by th[e supreme] court is to eliminate as far as practicable the element of partisanship and personal favoritism in the making of an appointment." *Mahnerd v. Canfield*, 297 Minn. 148, 154, 211 N.W.2d 177, 181 (1973) (citation omitted). "Th[e supreme] court previously has stated that civil service regulations are to be given a commonsense construction." *Anderson v. City of St. Paul*, 308 Minn. 121, 125–26, 241 N.W.2d 86, 89 (1976).

To be eligible for employment or promotion in the Police Division of the Public Safety Department, section III of the commission rules requires a person to file a written application, fulfill minimum job requirements, pass the examinations approved by the commission, fulfill the minimum experience and educational requirements, and be certified by the commission. Section I(f) defines "[p]romotion" as "any change, as the result of a promotional examination, from one salaried position . . . to a position of higher employment in the Police Division." Section VII(a) provides that "[t]he examination

6

process . . . shall be confirmed by the Commission as consistent with previous approved practices. Any changes to an approved process must be presented in detail to the Commission for approval prior to the process commencing." Under section VII(f):

> [I]f more than one phase of an examination is to be administered, the Commission shall approve, prior to the administration of any part of the examination, the method of grading each phase and the weight to be used in arriving at a final composite score. This decision shall be made at an official meeting of the Commission, and the relative weights assigned to the various phases of the examination shall be incorporated in the minutes of such official meeting.

Dean and Peterson argue that section VII of the commission rules requires the commission to "approve the method for grading each phase of the promotional process and the weight assigned to each section at an official meeting of the Commission, with the weights incorporated in the minutes of such meeting *prior* to the administration of *any* part of the examination." Dean and Peterson contend that, due to the supreme court's decision on the first writ of certiorari, "the process for which the examination was conducted was to be changed to include a review of the candidates' records of efficiency, character, conduct and seniority" but "this supposed change to the process was made after the other two portions of the examination, the oral examination . . . and the written examination." Dean and Peterson argue that "[t]he changes that Respondents made to the Promotional process were made . . . after the process had commenced in violation of Section VII(a) of the Commission's Rules."

The commission and city counter that section VII of the commission rules does not apply here because "the Commission was not changing an approved promotional process"

7

and because section VII "applies to the '[e]xaminations and [g]rading of [e]xaminations,' not the review of records conducted here." Dean and Peterson respond that "the term 'examination' not only refers to the written and oral evaluations, but to the entire process itself, including both the review of the candidates' records and the competitive examination required under Minn. Stat. § 419.06(9)." In support of their argument, Dean and Peterson contend that "under the Rules a 'Promotion' results from a 'promotional examination,' not a promotional examination *and* a records review." In addition, they argue that "when dealing with the oral and written portions of the exam, the Rules refer to those sections as 'test[s]' which implies they are separate from the examination itself." Dean and Peterson also argue that "a review of the candidates' records as required by [section 419.06(9)] is never mentioned within the entire Rules, therefore it is implicitly included under the broad term 'examination.'" Dean and Peterson's arguments are unavailing for several reasons.

First, section 419.06(9) distinguishes between "examination" and "records." *See* Minn. Stat. § 419.06(9) (providing that police commission must adopt rules providing for "promotion based on competitive examination *and* upon records of efficiency, character, conduct and seniority" (emphasis added)). In addition, "[a]ll examinations shall be . . . designed only to test the relative qualifications and fitness of applicants to discharge the duties of the particular employment which they seek to fill." Minn. Stat. § 419.09 (2014). These statutory provisions, under which the commission rules were adopted, indicate that "examination" is separate from consideration of candidates' records.

Second, while section I(f) of the commission rules provides that a "promotion" results from a "promotional examination," section III establishes additional requirements

8

for a person to be eligible for promotion. Under section III, to be eligible for promotion a person must file a written application, fulfill minimum job requirements, pass the examinations approved by the commission, fulfill the minimum experience and educational requirements, and be certified by the commission. Accordingly, we reject Dean and Peterson's contention that "review of the candidates' records" is included in the term "examination" under the commission rules because a "promotion" is defined to result from a "promotional examination" and "not a promotional examination *and* a records review."

Third, we are not persuaded by Dean and Peterson's distinction between an "examination" and "test" under the commission rules. An "examination" is "[t]he act of examining or the state of being examined" or "[a] set of questions or exercises testing knowledge or skill." *The American Heritage Dictionary of the English Language* 617 (5th ed. 2011). A "test" is "[a] procedure for critical evaluation; a means of determining the presence, quality, or truth of something" or "[a] series of questions, problems, or physical responses designed to determine knowledge, intelligence, or ability" or "[a] basis for evaluation or judgment." *Id.* at 1798. Section 419.09 provides that "[a]ll examinations shall be . . . designed only to test the relative qualifications and fitness of applicants to discharge the duties of the particular employment which they seek to fill." Minn. Stat. § 419.09.

In addition, section VII(a) of the commission rules provides that "[t]he *examination process* for the Position(s) . . . shall be confirmed by the Commission as consistent with previous approved practices. Any changes to an *approved process* must be presented in detail to the Commission for approval prior to the process commencing." (Emphasis added.) Section VII(b) provides that "[t]he *test approved* by the Commission may be

9

written, oral, or in the form of a demonstration of skill, or any combination of these." (Emphasis added.) The "test approved" under section VII(b) most naturally refers to the "examination process" that the commission must confirm or approve under section VII(a). We conclude that the most commonsense construction of the commission rules is that "examination" and "test" are synonymous and do not include consideration of the candidates' records. *See Anderson*, 308 Minn. at 125–26, 241 N.W.2d at 89 ("Th[e supreme] court previously has stated that civil service regulations are to be given a commonsense construction.").

While consideration of candidates' records is not explicitly mentioned in the commission rules, such consideration is not, as Dean and Peterson contend, "implicitly included under the broad term 'examination.'" Section VII(g) of the commission rules provides that "[s]ubsequent to the completion of all phases of an examination, the Commission shall meet to review grading of the candidates and to establish an eligible list." Again, section III requires a person to file a written application, fulfill minimum job requirements, pass the examinations approved by the commission, fulfill the minimum experience and educational requirements, and be certified by the commission. Section V of the commission rules requires the commission or its designee to review applications "to determine if they comply with the minimum qualifications required" and either approve or reject the applications. Under section V, "[a]pplications may be rejected" for several reasons, including the failure to satisfy minimum application or experience requirements, past records of crimes or disgraceful conduct causing an applicant to be unfit for the position, and "[p]revious dismissal or resignation from public or private employment

10

because of delinquency or misconduct that would directly affect their employment." These bases for rejecting an application essentially encompass a candidates' "records of efficiency, character, conduct and seniority." Minn. Stat. § 419.06(9). Consideration of candidates' records therefore is not "implicitly included under the broad term 'examination.'"

We conclude that the commission did not violate the commission rules when it considered the candidates' records of efficiency, character, conduct, and seniority on remand from the supreme court.

**Affirmed.**